## Reed's Administratrix v. Illinois Central Railroad Company.

(Decided December 10, 1918.)

### Appeal from McCracken Circuit Court.

1. Injunction—Court May Enjoin a Citizen From Suing a Domestic Citizen in a Foreign State.—The courts of this state have the power to enjoin a citizen of the state from prosecuting a suit against one of its citizens in the courts of another state when the facts justify it.

2. Injunction—Court May Enjoin a Citizen From Suing a Domestic Citizen in a Foreign State—Facts That Authorize an Injunction.—Before an injunction will be granted the facts must plainly show that the institution of a suit in the foreign state was for the purpose of securing to the plaintiff some unfair or unconscionable advantage arising either under law or facts, or that the prosecution of the suit in the foreign state would subject the defendant to such great and unnecessary inconvenience and expense as to make it appear that the foreign forum was selected for the purpose of vexatiously harassing the defendant.

3.  Injunction—Court May Enjoin a Citizen from Suing a Corpora-
    tion Under Federal Employers' Liability Act in Another State.—
    Where a foreign corporation has become incorporated in this
    state, the courts of this state may enjoin a resident citizen from
    bringing suit against the corporation under the Federal Employers'
    Liability Act in another state.
4.  Railroads—When Company Becomes Citizen of This State.—
    Where a foreign railroad company becomes incorporated in this
    state, under section 841 of the Kentucky Statutes, it thereby be-
    comes a citizen and resident of this state entitled to the same
    rights and privileges as any other citizen.
5.  Torts—Transitory Action—Where May Be Brought.—An action to
    recover damages for personal injury sounds in tort and may be
    brought at any place where the defendant may be found and
    served.
6.  Torts—Law of Place Where Tort Committed Controls No Matter
    Where Suit Brought.—No matter in what state an action for
    tort is brought the law will be administered as it would be in
    the state where the tort was committed.
7.  Master and Servant—Federal Employers' Liability Act—Controls
    Substantive Law of Case.—In an action under the Federal Em-
    ployers' Liability Act the court must administer the substantive
    law of the case according to the provisions of that act.
8.  Limitation of Actions—Restraint by Injunction Stops Statute from
    Running.—The statute of limitation does not run during the time
    the plaintiff is restrained from prosecuting his suit.

SAMUEL A. ANDERSON, JOS. R. GROGAN and W. MIKE
OLIVER for appellant.

WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This equitable action was brought in the McCracken
circuit court by the Illinois Central Railroad Company
against the administratrix of Jerry Reed to enjoin her
from prosecuting, in a circuit court in the state of Min-
nesota, an action there brought against the railroad com-
pany to recover damages for the death of her husband,
Jerry Reed, which was caused, as alleged by her in the
petition filed in the Minnesota court, by the negligence
of the railroad company.

When the case came on for hearing in the lower court
it was adjudged ''that the defendant, Linnie Reed, as
administratrix of the estate of Jerry Reed, deceased, be
and she is perpetually restrained and enjoined from
maintaining, carrying on or prosecuting any suit or pro-
cedure by her, now instituted in the state of Minnesota

against the Illinois Central Railroad Company, because of, or on account of the death of Jerry Reed, deceased, and she is perpetually restrained and enjoined from prosecuting or assisting in the prosecution, or in any manner trying the cause of Linnie Reed, as administratrix of the estate of Jerry Reed, deceased, plaintiff v. Illinois Central Railroad Company, now pending in the district court of the second judicial district, in the county of Ramsey, in the state of Minnesota, and the said Linnie Reed, administratrix, as aforesaid, is restrained and enjoined perpetually from in any manner assisting or engaging in the prosecution of said suit, so instituted in the state of Minnesota, by her as administratrix of Jerry Reed, deceased, against the Illinois Central Railroad Company.'' From that judgment this appeal is prosecuted.

Briefly stated the facts out of which the litigation arose are these: Jerry Reed, at the time he received the injury that resulted in his death, was in the employ of the railroad company as a laborer in its yards in Paducah, Kentucky, and it was his duty in the course of his employment to carry ice from an icehouse nearby to passenger cars that were standing on the tracks in the yards. While performing this labor, Reed, in attempting to pass through an opening on one of the tracks that had been made by uncoupling and separating for a distance of a few feet two of the passenger cars, was caught between the cars when an engine attached to one of them backed it against the other for the purpose of making a coupling and was crushed to death, the administratrix claiming that his death was caused by the negligence of the trainmen while the railroad company's contention is that his death was brought about solely by his own negligence.

In its petition for an injunction it was averred that the death of Reed was not caused by any fault on its part; that the trainmen in charge of the engine did not know of the presence of Reed between the cars at the time or before the coupling was made, or have reason to anticipate that he would go between them, as his conduct in so doing was in violation of the rules of the company; that neither the trainmen nor any other employee of the railroad company was guilty of any negligence in the movement of the cars, or in any other respect that contributed to or brought about the death of Reed.

It was further charged that Reed, at the time of his death, was a citizen of the state of Kentucky, residing in the county of McCracken, and that his widow, who qualified as administratrix, was, at the time of her appointment and qualification, and when the injunction suit was brought, a citizen of the state of Kentucky, residing in McCracken county, in which county she qualified as administratrix; that soon thereafter, and while residing in McCracken county, she was persuaded to and did employ one Samuel A. Anderson, an attorney residing in the city of St. Paul, Minnesota, who made a specialty of damage suits against corporations, to bring a damage suit for her against the railroad company; that Anderson, in the prosecution of his practice as a damage suit lawyer, had agents or "runners," who were not lawyers, soliciting business for him in the city of Paducah as well as at various other points in several states of the union at which railroad companies, whose lines of railroad entered the state of Minnesota, had lines of road, and transacted business; that through the instrumentality of his agent or "runner," located in Paducah, who was not an attorney-at-law, Anderson procured the administratrix to employ him as attorney to institute and prosecute the damage suit in the courts of Minnesota against the railroad company, and as a part of the contract of employment it was agreed that Anderson would investigate, at his own expense, the facts in relation to the case and pay all cost incident to the institution of the suit, make all bonds that might be necessary in its prosecution, and pay, at his own expense, the railroad fare, hotel bills and other necessary expenses of any witnesses that it might be necessary to take from Paducah to St. Paul, and in addition, support and maintain the administratrix during the pendency of the suit; that in consideration of his services, Anderson should receive thirty-three and one-third per cent of the amount recovered by judgment or compromise; that pursuant to this contract Anderson had paid to the administratrix forty dollars a month, as well as contributed in other ways to her wants.

It was further averred that the practice and procedure in negligence cases in the state of Minnesota were materially different from and much more favorable to the plaintiff in suits against corporations than the practice and procedure in the courts of this state, and that

the suit was brought in Minnesota for the purpose of avoiding the effect of the practice and procedure in the courts of Kentucky, and to obtain the advantages that would result from the difference between the practice and procedure in Minnesota and Kentucky controlling and regulating this character of suits.

It is provided in part in section 841 of the Kentucky Statutes that "No company, association or corporation created by, or organized under, the laws or authority of any state or county other than this state, shall possess, control, maintain or operate any railway, or part thereof, in this state until, by incorporation under the laws of this state, the same shall have become a corporation, citizen and resident of this state." And further provided that any company, association or corporation operating a railroad in this state may become "a corporation, citizen and resident of this state," by being incorporated in this state in the manner provided in the statute. And it was averred in the petition that the railroad company had observed the requirements of this statute and thereby become a citizen and resident of this state.

It was further averred that the court in which the suit was brought in the state of Minnesota was about one thousand miles distant from Paducah, in this state, the place of the accident, and that it would entail great and unreasonable expense on the part of the railroad company in transporting and defraying the expenses of its witnesses from Paducah, where they all lived, to the place of trial in Minnesota, and in addition thereto would cause it to suffer great loss and inconvenience on account of the necessity of taking and keeping away from their business for several days and perhaps weeks, witnesses who were connected with the train service and whose presence it would need on the trial of the case; that all of the witnesses that would be needed on the trial of the case by both the plaintiff and defendant were residents of the city of Paducah and engaged in business there at the time the accident happened and when the injunction suit was brought.

It was further averred that there was a circuit court having jurisdiction of actions like this in practically continuous session in the city of Paducah, in which the action could have been brought by the administratrix and prosecuted within a reasonable time to a final conclusion, and

that the suit was brought in the state of Minnesota not only for the purpose of subjecting the railroad company to great and unnecessary expenses but to vexatiously harass and annoy it in the conduct of its business.

To this petition, the averments of which were supported by evidence, an answer was filed by the administratrix traversing all of the material allegations, and in behalf of the administratrix the depositions of several witnesses were taken, but their evidence was confined to an attempt to show that the business of the railroad company would not be seriously disarranged or interfered with if it was required to take some of its trainmen as witnesses to appear in the trial in the Minnesota court.

On this appeal several grounds are relied on for reversal, but we think they may be condensed into these two: (1) That as the Federal Employers' Liability Act, under which the suit was brought, authorized its institution and prosecution in the state of Minnesota, this right could not be taken away from the plaintiff by injunction in the manner stated; (2) that the court erred in granting a perpetual injunction because the petition did not state, and the evidence did not establish, facts sufficient to warrant an injunction.

Before, however, coming to consider these grounds it may be stated that the principle that the courts of one state have the power to enjoin a citizen of that state from prosecuting in the courts of another state a suit against one of its citizens is probably as well settled by the great weight of authority as any question involving the power and jurisdiction of courts could be, although there is much difference of opinion as to the grounds on which this power and jurisdiction should be rested, the prevailing opinion being that each case in which this question is presented must be determined by the facts of the particular case.

Thus it is said, in 14 R. C. L. 412: "The general rule, therefore, is, that where a party is within the jurisdiction of the court, he may, on a proper showing, be enjoined from prosecuting an action in a court of another state. The question, however, as to when this jurisdiction may be exercised is often one of great delicacy, owing to the fact that it may frequently lead to a conflict of jurisdiction. Hence, the power is used sparingly, and the peti-

tioner must show good equitable grounds, or the injunction will not issue. . . .

"No general rule can be laid down as to when the court ought to enjoin a party from prosecuting a suit in a foreign jurisdiction. Each case must be ruled by its own facts. If they show that it is necessary and equitable to exercise the power in the orderly administration of justice, the court should enjoin the party, otherwise not. Ordinarily if the case stated in the bill is such as to render it the duty of the court to restrain a party from instituting or carrying on proceedings in a court of its own state, it is bound in like manner to enjoin him from prosecuting a suit in a foreign court. All that is necessary to sustain jurisdiction in such cases is, that the plaintiff should show a clear equity, and that the defendant should be subject to the authority and within the reach of the process of the court. The subject matter in controversy does not apparently have any effect on the court's action in granting or refusing an injunction, but such action is rather dependent on the purpose of the prosecution of the foreign suit or the end to be attained by the injunction."

In Eingartner v. Illinois Steel Co., 94 Wis. 70, Judge Freeman, in an extensive note to this case, that may be found in 59 Amer. St. Rep. 859, said: "It may, therefore, with confidence, be affirmed that the courts of one state may enjoin the prosecution of a judicial proceeding in another state upon substantially the same grounds that the courts of one nation may enjoin the prosecution of a suit or action in the courts of another nation. It will be found, upon an examination of the decisions upon this subject, that it is not necessary, in order to obtain relief, to establish the usual grounds for equitable interposition, namely, fraud, accident or mistake, but that it will be sufficient to entitle a citizen of a state to injunction preventing another citizen thereof from prosecuting an action against the former in the courts of another state to show that the purpose or necessary effect of such action is to obtain an advantage to which the plaintiff therein is not entitled in the domicile of the parties"

The Maryland Court of Appeals, in Miller v. Gittings. 85 Md. 601, 37 L. R. A. 654, after a full investigation of the question, said: "The authorities show that equity will enjoin suits in other states where there is fraud, op-

pression, vexation, injustice, or unconscionable advantage; and most especially where there is an attempt to evade or defeat the operation of the laws of the state where both parties to the suit reside.''

In Bigelow v. Old Dominion Copper Co., 74 N. J. Eq. 457, the New Jersey court said, speaking through Justice Pitney: ''I have not the least doubt or difficulty about the power of a court of equity in one state to restrain its own citizens, or other persons within the control of its process, or in foreign countries. The power proceeds from the undoubted authority that a court of equity possesses over persons within its jurisdiction to restrain them from doing anything that is contrary to equity and good conscience, to the wrong and injury of others, whether the threatened inequitable conduct consists in the prosecution of an action or whatever it may happen to be. The court of equity thus appealed to acts *in personam*, and it is immaterial whether the threatened inequitable conduct is to be carried on within or without the limits of the jurisdiction.''

In Hawkins v. Ireland, 64 Minn. 339, 58 Amer. St. Rep. 534, the Minnesota court said, in upholding the right to enjoin the prosecution of a suit in other states, that: ''The power of the court thus to enjoin the appellant is undoubted. All the parties to this action are citizens of this state, and subject to the jurisdiction of the court. The fact that the land is in another state, and the action which the appellant is forbidden to further prosecute is there pending, do not affect the question of the power of the court in the premises. The court, in such a case, simply commands its own citizens, not the courts of another state. A court of equity of this state has the power and will restrain its own citizens, of whom it had jurisdiction, from prosecuting suits in the courts of other states and foreign jurisdictions, whenever the facts of the case make such restraint necessary to enable the court to do justice, and prevent one citizen from obtaining an equitable advantage over other citizens.''

In Cole v. Cunningham, 133 U. S. 107, 33 Law Ed. 538, the Supreme Court of the United States, after an exhaustive consideration of the subject, said, in upholding the jurisdiction of the Massachusetts court to restrain a citizen of that state from prosecuting a suit against another citizen of that state in a New York court,

that: "It is now held that whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally with respect to the subject of suits in a foreign country, as the ends of justice may require; and with that view to order them to take, or to omit to take, any steps and proceedings in any other court of justice, whether in the same country, or in any foreign country. . . .

"Such is undoubtedly the result of the clear weight of authority, and the rule has been often applied by the courts of the domicile against the attempts of some of its laws to the wrong and injury of others."

Further citation of authority in support of the jurisdiction exercised by the lower court in this case would unnecessarily encumber this opinion, because there is, as we have said, no dispute as to the power of the court in a proper state of case to enjoin a citizen of the state from prosecuting against another citizen of the state a suit in the courts of another state. And the railroad company was, in the meaning of the law and by the express provision of section 841 of the Kentucky Statutes, a citizen of this state.

This conclusion brings us to the consideration of the question raised by counsel for appellant, that as the Federal Employers' Liability Act authorized the administratrix to bring this suit in the state of Minnesota, the Kentucky court had no power to enjoin her from prosecuting the suit that she had lawfully brought in the state of Minnesota.

The Federal Employers' Liability Act, under which the suit was brought, as amended, provides that "Under this act an action may be brought in a circuit court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

It will be observed that this statute fixes the venue of the action when it is brought in a circuit court of the United States at three places, and further provides that

the jurisdiction of the courts of the United States shall be concurrent with that of the courts of the several states; thus, as we think, permitting the action to be brought in a state court at any place where it might be brought in a circuit court of the United States, and this being so, under the admitted facts the Minnesota state court had jurisdiction, as the railroad company was doing business in the Federal district in which the action was brought at the time of its commencement.

We do not, however, give to this statute the peremptory effect claimed for it by counsel for the administratrix or agree with their contention that, as it was allowable under the act to bring this suit in the state of Minnesota, therefore the plaintiff could not be restrained by injunctive process from prosecuting it to a conclusion in that state.

The action was a transitory one, and except for the provisions of the act limiting the places where it might be brought, it could have been brought in any court having jurisdiction at any place where the railroad company could have been brought before the court by process.

Extensve citation of authority in support of this proposition is unnecessary as it is agreed everywhere that an action for tort such as this was may be brought at any place where the defendant may be found and served. 40 Cyc. 107.

The Federal act does not, as we think, take away from the courts the power they possessed before its enactment to restrain the plaintiff in a transitory suit from doing an inequitable and unconscionable thing that would subject the defendant to great and unnecessary cost and inconvenience.

Before the passage of this act the plaintiff had exactly the same legal right to institute her action in any court having jurisdiction, in which the railroad company could have been brought before the court, as she does now to bring it in the three places specified in the act.

It therefore seems to us that if it was allowable in a proper state of case before the act to enjoin the plaintiff from bringing a suit in a court and at a place where under the law she had the right to bring it, it must be equally allowable to do so since the act, because the act

merely limits instead of enlarging the places where the suit must be brought and it confers no more right to bring the suit in the places named in the act than the general law before the act conferred the right to bring the suit at any place where the defendant could be brought before a court having jurisdiction.

The remaining question is—Did the averments of the petition, which were fully supported by the evidence, warrant the McCracken circuit court in granting the injunction? If they did, the judgment below should be affirmed. Aside from the question of comity between the states, and the reluctance that the courts of one state naturally have to interfere with the prosecution of actions in the courts of another state, it is a serious and delicate matter for a court to thus restrain a citizen from the exercise of a privilege given to him by the law merely upon the ground that in exercising it he may subject his adversary to greater expense and inconvenience than he would suffer if the suit had been brought in another place.

Accordingly this extraordinary relief will only be granted when the facts plainly show that the institution of the suit in the foreign state was for the purpose of securing to the plaintiff some unfair or unconscionable advantage arising either under the law or fact, or that the prosecution of the suit in the foreign state would subject the defendant to such great and unnecessary inconvenience and expense as to make it appear that the foreign forum was selected for the purpose of vexatiously harassing the defendant.

In 14 R. C. L. 415, the rule is thus stated: "As a general rule, the court will consider the purpose of the parties and the object sought to be accomplished by appealing to a court of another state and, in case it appears that the interposition of the court is necessary to prevent an inequitable thing, something contrary to good conscience, it may grant the relief asked. Therefore, it is recognized that a court of equity in one state has power to restrain its own citizens, of whom it has jurisdiction, from prosecuting suits in the courts of other states, whenever the facts of the case make such restraint necessary to enable the court to do justice and prevent one citizen from obtaining an inequitable advantage over other citizens." Supporting this rule,

which is in full accord with the overwhelming weight of authority, reference may be had to the following cases: Mason v. Harlow, 84 Kan. 277, 33 L. R. A. (N. S.) 234; Hawkins v. Ireland, 64 Minn. 339, 58 Amer. St. Rep. 534; Bigelow v. Old Dominion Copper Co., 74 N. J. Eq. 457; O'Haire v. Burns, 45 Col. 432, 25 L. R. A. (N. S.) 267.

Having this view of the law controlling the case, we will now take up the argument of counsel in support of the judgment.

It is urged that the injunction should have been granted on account of the plainly unlawful and scandalous manner in which Anderson secured employment in the case and was authorized to bring the suit in the state of Minnesota. But we doubt if this conduct of Anderson in itself and independent of other circumstances would furnish ground for the relief obtained in the lower court. Courts can not control litigants in their choice of attorneys or dictate what attorneys they shall employ in their private business. The mere fact that the litigant sees proper to engage the services of an attorney who is able to secure the employment by such unprofessional and reprehensible methods as Anderson resorted to and which would result in his prompt disbarment if an attorney in this state (as may be seen by an examination of the case of Chreste v. Commonwealth, 171 Ky. 77, 178 Ky. 311), is no ground in itself for restraining the litigant from bringing a suit where the law gives him the right to bring it. Although it should here be said that the manner in which the employment was secured by Anderson and the bringing of the suit in a distant state at his instigation, are weighty circumstances to be considered in connection with others in determining whether the relief sought by the railroad company should have been granted.

It is also pressed on our attention that there is no merit in the case for the plaintiff as the evidence in the record shows that the death of Reed was caused purely by his own negligence, and hence there could be no recovery in behalf of his administratrix. Whether this is so or not we are not prepared to say because there is no evidence in the record for the administratrix showing how Reed came to his death. But aside from this we may pass this argument with the statement that the

mere fact that the plaintiff might fail in her suit would not in itself be sufficient grounds to enjoin her from bringing it in any forum she had the right to select.

Nor do we attach controlling importance to the evidence appearing in the record and argument of counsel thereon that the practice and procedure in the Minnesota courts are more favorable to plaintiffs in damage suits than the practice and procedure in the courts of this state. We assume that both parties to this litigation would be given as fair a trial in the courts of the state of Minnesota as they would in the courts of this state. And as the accident that resulted in the death of Reed occurred in this state, the right of plaintiff to recover and the liability of the railroad company would be determined in the Minnisota court according to the laws of this state. Northern Pac. R. Co. v. Babcock, 154 U. S. 190, 38 Law Ed. 958; Louisville & Nashville Railroad Co. v. Smith, 135 Ky. 462; Illinois Central Railroad Co. v. Jordan, 117 Ky. 512; Louisville & Nashville Railroad Co. v. Keiffer, 132 Ky. 419.

In addition to this, and aside from the difference there may be in the Minnesota and Kentucky practice, the substantive law of the case would be administered and applied in the courts of Minnesota as it would be administered and applied in the courts of this state, because the action was brought under the Federal Employers' Liability Act, which insures uniformity of substantive law in every court and every state in which such an action may be brought. Central Vermont Railroad Co. v. White, 238 U. S. 507, 59 Law Ed. 1433; Norfolk Southern R. R. Co. v. Ferabee, 238 U. S. 269, 59 Law Ed. 1303.

Neither could there be a judgment for the plaintiff, in the absence of evidence tending to show negligence on the part of the railroad company that resulted in the death of Reed, because the act expressly provides that the carrier "shall be liable in damages . . . for such injuries or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier," so that the plaintiff's right of recovery in every case depends on his ability to show some negligence on the part of the carrier. If he fails to show negligence on the part of the carrier there is no liability. Great Northern Ry. Co. v. Wiles, 240 U. S. 444,

60 Law Ed. 732; Chicago, Rock Island Ry. Co. v. Wright, 239 U. S. 548, 60 Law Ed. 431; Cincinnati, New Orleans & Texas Pacific Railway Company v. Swann's Administratrix, 160 Ky. 458.

We therefore put aside as not of controlling importance all of the grounds relied on by counsel for the railroad company to support the judgment appealed from except the single one that the suit was brought in Minnesota for the sole purpose of subjecting the company to great and unnecessary expense and inconvenience, and to vexatiously harass and annoy it, and all this without securing to the administratrix any material benefit.

On this ground we think the company was entitled to the relief obtained and believe that a brief summing up of the facts appearing in the record will demonstrate the soundness of the conclusion we have reached.

Here we have the case of a railroad employee who was killed as a result of his own or the company's negligence; it is not material which, so far as this suit is concerned.

He was a citizen of this state and resided at the place where he came to his death, and there his widow, who was also a citizen of this state, resided, as well as all the witnesses who might be needed by either of the parties to this litigation.

His widow qualified as administratrix in the county where she lived and in that county there was a circuit court of general jurisdiction almost continuously in session, in which she could have filed her suit for damages and obtained a speedy trial with little expense or inconvenience to herself or the company or the witnesses for either.

Under the laws of this state, and the practice and procedure in its courts, her chances of recovery would be as good as in the courts of the state of Minnesota, but notwithstanding these favorable conditions and surroundings, she was persuaded by Anderson to bring her suit in the state of Minnesota, about one thousand miles distant from her home, the place of the accident and the residence of all the witneses for both parties.

We say she was persuaded by her attorney to do this because it is inconceivable that this woman, under the undisputed facts as we have stated them, would freely or voluntarily leave her home and go to a distant state

to bring this suit. But whether this be so or not, she must be answerable for what her attorney procured her to do. Of this we have no doubt, because all the harm that it was sought to subject the railroad company to was done in her name, and only by acting upon her could the wrong be corrected.

Under these circumstances we may well believe, and do, that the administratrix, under the influence of Anderson, was induced to bring the suit in Minnesota in order that the railroad company might be subjected to great and unnecessary expense and inconvenience and for the purpose of vexatiously harassing and annoying it. Probably Anderson adopted this course with the expectation that the railroad company, rather than go to the expense and inconvenience that would attend its defense of the case in the Minnesota court, would pay a substantial sum in settlement, but whether this was the moving cause or not it seems clear to us that the only purpose of bringing the suit in the Minnesota court was to harass and annoy the company and subject it to as much expense and inconvenience as possible.

Accordingly we think the judgment below was correct.

It is, however, proper that we should say that the judgment in this suit will not bar the administratrix from bringing in this state, within the time allowed by the act, after excluding the period during which she was restrained by the injunction, another suit against the railroad company to recover damages for the death of Reed, because it is provided in section 2544 of the Kentucky Statutes that "In all cases where the doing of an act necessary to save any right or benefit is restrained or suspended by injunction or other lawful restraint, vacancy in office, absence of an officer, or his refusal to act, the time covered by the injunction, restraint, vacancy, absence, or refusal to act, shall not be estimated in the application of any statute of limitations." And as the plaintiff was restrained by injunction from prosecuting her suit, which was brought in seasonable time, this statute saves the cause of action from being barred by limitation during the pendency of the injunction.

The judgment is affirmed.