## Calhoun et al. v. Lenahan et al.

(Decided Dec. 6, 1935.)

THOMAS W. BEALE, JOHN M. MARSHALL and PETER, HEY-BURN, MARSHALL & WYATT for appellants.

HAGAN & HAGAN and A. M. MARRET for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Under the provisions of sections 3713 to and including 3716 of the 1930 Edition of Carroll's Kentucky Statutes, a town or city of the sixth class may be established by pursuing the course outlined in sections 3714 and 3715. The procedure for that purpose is the filing of a petition by two-thirds of the voters in the territory in the circuit court of the county of its proposed location, preceded by the giving of prescribed notices, etc. The petition also is required to state that the territory proposed to be incorporated shall have at least 125 inhabitants and the boundary thereof shall not exceed one-fourth of a mile in length in each direction and in the form of a square. After the prescribed notice of the filing of a petition, it becomes the duty of the judge of the circuit court in which it is filed to enter the requisite judgment to effect the incorporation, unless the statutory prescribed defense thereto is made by any inhabitant of the proposed town. The only defense appears to be a failure to take any of the requisite prior steps by the petitioners, or some defect, contrary to the provisions of the statute, in the petition. When defense is made the court shall hear it, and if it is satisfied that "the population within the prescribed boundary is sufficient, and the proper notice or publication has been made or given it shall have no discretion as to the establishment of the town."

Appellants are residents of a suburban territory to the city of Louisville, formerly occupied by a United

States Military Training Camp, known as "Camp Zachary Taylor," which is outside of but near to the southern corporate limits of the city of Louisville. The requisite number of residents and citizens in a described portion of that territory attempted to incorporate it under the sections of the statutes referred to, to be designated as the town or city of "Poplar Heights." A number of other inhabitants of the proposed incorporated territory, representing the group of plaintiffs in the instant action, appeared in the circuit court to make defense, and perhaps did enter some motion; but there was no trial of the merits, since the petitioners concluded, and perhaps correctly so, that they had not strictly followed the requirements of the statute. Another effort to incorporate the town under the same statutes was abortive for similar reasons, there being no trial of the merits of the case in that second procedure which covered practically the same territory. Because it possessed some of the same defects (chiefly improper boundaries) as did the first effort at incorporation, it was dismissed without prejudice.

A third effort was successful by default (i. e., no protesting inhabitants appeared and made defense) and the town was incorporated with the appointment of city officials as is also prescribed for in the same statutes. Thereafter its council, pursuant to statutory authority, passed an ordinance annexing some adjacent territory, following which a majority of the voters in the enlarged municipality filed a petition in the Jefferson circuit court, under the provisions of 3662a-1, to dissolve the municipality as so enlarged, and in which they were successful. The group of citizens and inhabitants desiring the establishment of a sixth-class town, some time after the dissolution, were engaging in efforts to prepare and file another petition under the same sections of the statutes to incorporate the territory therein proposed into a sixth-class municipality when the opposition group, composed of plaintiffs herein, filed this independent equity action against them (defendants herein) to enjoin them from doing so because they were engaging in what plaintiffs alleged was "vexatious litigation."

The answer of defendants denied the only equity jurisdiction invoked and asserted their good faith in all of the steps that had been taken to bring about the establishment of the sixth-class town, which they thought

and averred would redound to the benefit of its citizens. Following pleadings made the issues, and after evidence heard the court sustained in part the prayer of the petition and enjoined defendants from not only filing the contemplated procedure, the preparation of which was already made, but likewise enjoined them until June 1, 1936, "from instituting another suit or suits, and from taking any further steps for the incorporation of a town of the sixth class embracing the following territory," etc., and from that judgment defendants prosecute this appeal.

A plat of the camp Zachary Taylor suburb was filed in the cause, and it shows the proposed boundaries of each of the three actually filed applications for incorporation, as well as the enjoined one. They are not identical in territory nor in size, although two of them are practically so, and one of them is, as marked out on the plat, much larger than any of the others, and perhaps it was abortive because of the excess boundary over and above that permitted by the statute, and which may have been the reason for its abandonment. But whether so or not, we are convinced that this record utterly fails to present a situation or condition that calls for the equity jurisdiction enjoining litigation because of its vexatious qualities. It is closely related to a kindred doctrine, well established in equity jurisprudence, of restraining the filing and prosecution of a "Multiplicity of Suits" and which is exhaustively treated in volume I of the Fourth Edition of Pomeroy's Equity Jurisprudence, sections 263 to and including 275. It is shown therein that some courts have largely departed from the original grounds that gave birth to the exercised jurisdiction of equity to enjoin a multiplicity of suits at law. But it is not necessary for the purposes of this case to go into that history more than to state that the learned author, and which is also true as to others we have consulted, more or less deprecates the fact that the jurisdiction has been expanded by some courts far beyond the situations in which it was first applied and the evil which its first promulgation was intended to reach and remedy.

From the jurisdiction, as eventually established, the branch of equity jurisdiction upon which this action is based (i. e., the restraining of vexatious litigation) sprouted and grew, the foundation principle of which is that the defendants in such an action are (1) re-

peatedly and wrongfully harrassing plaintiff with (most generally fruitless) litigations in law courts without any reasonable probability of success, and in which actions, because of their nature and quality, one judgment is not a bar to a future like one—an example of which is an action to recover the possession of real property and in which title is not involved, and (2) where the action or actions sought to be enjoined are those which defendant in the equity injunction action had the legal right to institute, but the circumstances and venue selected by him makes its defense unnecessarily burdensome and expensive to defendant therein and wherein the plaintiff may, and under all reasonable probabilities will, obtain an unjust advantage and a possible improper verdict, an illustration of which is to be found in the case of Reed's Adm'x v. Illinois Central R. Co., 182 Ky. 455, 206 S. W. 794. In that case a suit against defendant therein was instituted in Minnesota to recover damages for the alleged negligent death of plaintiff's decedent occurring in Paducah, Ky. It was determined by this court that from the facts developed it was clearly apparent that the venue of the action was selected by plaintiff therein (defendant in the equity action) through wrongful and vexatious motives, and its further prosecution in the selected jurisdiction was enjoined.

Clearly, this case does not come within subdivision (2), and if it has any foundation support at all, it must emanate from our subdivision (1) supra. As we have seen, only three prior efforts at incorporation of the involved municipality were made by defendants herein. Only one of them was heard on its merits, and then only by default. The other two were dismissed because of either actual or conceived imperfections in their preparation and filing. The successful effort was later annulled—not by the defendants herein, but through the exclusive efforts of plaintiffs herein in the exercise of their right conferred by section 3662a-1 of our Statutes. They are, therefore, in a sense, complaining against defendants' right to reconstruct the house that they tore down. We fail to see any distinction between the facts of this case and one where a plaintiff made two abortive efforts at obtaining relief against a defendant and the court sustained demurrers filed to his petition. If the two unsuccessful efforts of defendants herein to incorporate the municipality which they sought

to do, in the circumstances developed in this case, could be characterized as "vexatious litigation" sufficient to sustain an action against any similar efforts, then in the illustrated case the unsuccessful plaintiff could not file a third action in his effort to make his petition immune against the attacks of a demurrer thereto, because forsooth, by doing so he would be chargeable with "vexatious litigation," and would subject himself to the restraining process of injunction. The character of procedure enjoined herein is purely statutory and exclusively affects groups or particular units of the public in governmental relations. They do not, except perhaps only incidentally, involve any private rights of individuals as between themselves.

It will furthermore be noted that the defense to such a proceeding is narrow and extremely limited. Indeed, it is reduced to nothing, if the petitioners represent the required number of citizens within the proposed incorporated territory as prescribed in the statute, and they substantially pursue its other provision. Likewise, may the required number of citizens dissolve the incorporation under the other statute (section 3662a-1), but the number that may do so is only a majority of them, whilst it requires two-thirds of the citizens applying therefor to incorporate. Therefore, we have a situation where today the requisite number of citizens might succeed in having the territory incorporated, and tomorrow or next week, or next month, a less number of them may unincorporate or dissolve it. Each of them would be exercising their undeniable right in doing so under the two respective statutes. In such a case, it seems to us that it would ill become the dissolvers to say to the incorporators: "You shall no longer proceed under your statutory right to incorporate, since everytime you do so we intend to exercise ours and undo what you have done." As well might the incorporators enjoin the dissolvers on the same alleged ground of "vexatious litigation." Moreover, we do not interpret any of the testimony heard as developing the necessary vexatious character of litigation that supports the jurisdiction here invoked. On the contrary, it would seem that two-thirds of the voters in the territories proposed to be incorporated are in favor of doing so. They have signed four petitions in which they so expressed themselves, and in one of which (one-third of the three actually filed) they were successful, but

which was later rendered ineffectual through the exercise of a similar statutory right by plaintiffs or members of their group.

There is nothing in the statute prescribing a period to intervene between the filing of proceedings for incorporation, and it would have been unwise to have so provided, since the conditions existing today might not exist, even tomorrow, and advantages for incorporation might be absent today but present tomorrow. It might be that succeeding attempts at incorporation under practically the same conditions and facts could be made in such manner as to clearly establish vexatious motives, and which, if done, would justify the exercise of the jurisdiction here invoked; but it is sufficient to say that no such case is presented by this record.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside and to enter one dismissing the petition.