## BALTIMORE & O. R. CO. v. CLEM et al.

### Civ. A. No. 21-M.

District Court, N. D. West Virginia.

Jan. 15, 1941.

Harry H. Byrer, of Baltimore, Md., and J. O. Henson and Stephen Ailes, both of Martinsburg, W. Va., for plaintiff.

H. G. Shores, of Keyser, W. Va., and Wayland K. Sullivan, of Cleveland, Ohio, for defendants.

BAKER, District Judge.

The plaintiff is a corporation, incorporated under the laws of the State of Maryland, with its principal place of business at Baltimore. The defendants are both citizens and residents of Keyser, Mineral County, Northern District of West Virginia. The plaintiff is engaged in both interstate and intrastate commerce in Maryland, West Virginia, Ohio, and several other states.

In October of 1939 the defendant Clem met with an accident while working as an employee of the plaintiff in its shops at Keyser, West Virginia. In October, 1940, he instituted an action, under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., in the United States District Court for the Northern District of Ohio, at Cleveland, claiming damages in the sum of $30,000 as a result of the aforesaid injury. He employed, among others, the defendant Shores as one of his counsel.

This action was brought, seeking to restrain the defendants from prosecuting the action in Cleveland upon the grounds that the same was instituted for the purpose of annoying, harassing, and vexing the plaintiff herein, and that the forum chosen, to-wit, the United States District Court in Cleveland, was selected because of its distance from the scene of the accident and because its dockets are more congested than those of this Court, and that these two facts would make the defense of the action more difficult, more expensive, and less convenient than such defense would be in a forum near the scene of the ac-

cident, and that all of this constitutes an harassment of the plaintiff and an undue and unjust burden upon interstate commerce.

There was filed with the Bill of Complaint a written motion for a preliminary injunction. Service of process, as well as of a copy of the motion for preliminary injunction, and of a notice that a motion would be made in open court at Martinsburg on November 8, 1940, for such injunction, was duly had upon both defendants. Upon November 8th, counsel for the Railroad Company filed with the Court a letter from Mr. Shores, in which he advised that neither defendant was able to be present upon November 8th, and in which he stated that the defendants had no objection to the entry of a temporary restraining order. Accordingly, a temporary restraining order was entered, restraining the defendants as prayed in the Bill of Complaint. At the same time the motion for a temporary injunction was set down for hearing at Wheeling on November 15th.

Upon the latter day, Mr. Shores appeared in person, and Mr. Clem by counsel, and both plaintiff and defendant advised the Court that they wished to file written briefs upon the legal questions involved, and both parties agreed that the temporary restraining order should continue in force until the further order of the Court.

At the hearing in Wheeling, the plaintiff introduced testimony to substantiate the allegations of the Bill of Complaint. By this testimony it was established that all of the eyewitnesses to the accident reside in the near vicinity of Keyser, West Virginia; that certain of the records, which may reasonably be presumed will be necessary for the defense of this case, are kept at either Keyser or Baltimore; that physicians, who may reasonably be presumed to be necessary witnesses in the defense thereof, reside at Keyser, Cumberland, Maryland, and Baltimore. It was further established that the Circuit Court of Mineral County, West Virginia, holds regular terms at Keyser; that this Court holds regular terms at Martinsburg, a distance of approximately 100 miles from Keyser; that the District Court of the United States for the District of Maryland holds regular terms at Cumberland, a distance of approximately 30 miles from Keyser; that Cleveland is approximately 350 miles from Keyser.

There was testimony tending to show that the dockets of the United States District Court at Cleveland are relatively more congested than the dockets of this Court at Martinsburg.

There was testimony that to defend this case at Martinsburg would probably cost the defendants, for witness' fees, in the neighborhood of $326.58; and that to defend the same in Cleveland the probable attendance of the same witnesses would involve a cost of approximately $2,254.39. Both of these figures were, of course, estimates. But from all the evidence, the Court finds as a fact that it is reasonable to presume that the cost of defending this action at Cleveland would exceed the cost of defending the same at Martinsburg by $1,900, and that it could be defended in either the United States District Court at Cumberland, or in the Circuit Court of Mineral County at Keyser, for a still lower amount than it could at Martinsburg.

At the conclusion of the taking of testimony, the defendants dictated into the record a motion which is, in effect, a motion to dismiss this action. That motion, and the motion for temporary injunction, are now before the Court and, in so far as any of the above may be pertinent to the decision upon these motions, the Court now finds the same to be established as facts.

## Conclusions of Law.

It is so well established as to scarcely need citation of authorities that courts of equity have inherent jurisdiction to restrain the prosecution of actions at law where such prosecution would result in an unfair advantage to the party seeking to maintain the same. See Story's Equity Jurisprudence, 13th Ed., § 885; 5 Pom.Eq., § 670; Cole v. Cunningham, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538. The question presented here is whether the facts justify an application of that equitable doctrine, especially in view of the venue section of the Federal Employers' Liability Act.

As originally passed in 1908, the Federal Employers' Liability Act, 45 U.S.C.A. § 56, reads as follows: "No action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued."

As thus drawn, the federal courts held that actions brought thereunder could be maintained only in the State in which the defendant was incorporated. This made it

necessary for plaintiffs, in many instances, to either abandon claims or to maintain actions in Courts hundreds of miles from the scene of the accident and the residence of witnesses. To cure this situation, upon April 5, 1910, the Statute was amended to read as follows:

*"Actions; limitation; concurrent jurisdiction of courts; removal of case in State court.* No action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued.

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States, and no case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

It has been argued, upon behalf of the plaintiff, that this section was intended merely to confer a possible venue and that there is nothing contained therein, or contained elsewhere in the Act, which deprives the court of equity of its ancient power to restrain vexatious actions. This Court heretofore came to the conclusion that this position was correct, and so held in a prior case. Baltimore & Ohio Railroad Co. v. Bole, D.C., 31 F.Supp. 221. However, at the time of the decision in the Bole case, the Court's attention was not directed to the decision of the District Court for the Southern District of Ohio, in the case of Chesapeake & Ohio Railway Company v. Vigor, 17 F.Supp. 602, nor to that of the Circuit Court of Appeals for the Sixth Circuit, affirming the same. See Chesapeake ·& Ohio Railway Co. v. Vigor, 90 F.2d 7.

No case from the Fourth Circuit Court of Appeals, nor any opinion by the Supreme Court of the United States, touching upon this precise question, has been presented for the Court's consideration, and knowing the ability and diligence of counsel, I feel safe in assuming that none exist. On the other hand, the Vigor case, above cited, appears to me to be directly in point. The facts and holding in that case are adequately summarized in the syllabus to the District Court decision, which reads

as follows: "Railroad held not entitled to injunctive relief, to restrain prosecution in district other than that in which accident occurred, of action for employee's death, notwithstanding objections of difficulty or inability of producing witnesses or records, added expense, disadvantage, and inconvenience to railroad, difficulty of applying law, and objection that action sought to be enjoined would burden interstate commerce, where action was brought in district in which railroad was doing business (Federal Employers' Liability Act, § 6, as amended, 45 U.S.C.A. § 56)."

This decision was, as above noted, sustained by the Circuit Court of Appeals for the Sixth Circuit, and certiorari was denied by the Supreme Court of the United States. See 302 U.S. 705, 58 S.Ct. 25, 82 L.Ed. 545.

Under these circumstances, I feel that I must follow the decision in the Vigor case, and applying that decision to the facts before me, must refuse a temporary injunction, must dissolve the temporary restraining order, heretofore issued, and must dismiss the present action.

Much stress was laid, in the briefs for the plaintiff, upon the decision of the Circuit Court of Appeals for the Seventh Circuit, in Ex parte Crandall, 53 F.2d 969, 971. It is true that the opinion in that case contains a great deal of dicta which would seem to substantiate the Railroad Company's position. A study of that case, however, reveals that the question for decision was radically different from the one now before this Court. In that case a railroad employee was killed in an accident in Tennessee. His widow qualified as Administratrix of her husband's estate in Vanderburgh County, Indiana, and then instituted action for damages resulting from his death in the State Court in St. Louis, Missouri. It should be noted immediately that the action for death was instituted in a State Court, not in a United States Court. Upon application by the Railroad Company, the State Court in Indiana restrained the prosecution of the Missouri State Court action. The plaintiff ignored the Court's restraining order and proceeded with the Missouri prosecution. The Indiana Court thereupon adjudged the plaintiff in contempt, assessed a fine, and ordered her confined in jail for three months, the imprisonment to be suspended upon dismissal of the St. Louis action. The case reached the Federal

Court upon an application for habeas corpus, testing the legality of her confinement. This application was refused. It is true that in the opinion the Federal Court held that the State Court of Indiana was acting within its lawful jurisdiction when it enjoined the Administratrix from prosecuting the Missouri action, but it is apparent, from a mere statement of the facts, that many principles were involved in the Crandall case which are not before us here. In addition, the Court specifically stated in its opinion: "Whether the power of the state court to restrain would extend to the commencement of such suits in any federal court is not here involved."

I have commented at length upon the Crandall case principally because of the emphasis placed upon it by plaintiff's counsel. As to the other cases cited, suffice it to say that none involve the precise question as the case at bar. At the very best, all present merely analogous situations. The Vigor case is the only one directly in point, which has come to my attention.

As stated above, I feel that I must follow its decision.