## BALTIMORE & OHIO RAILROAD CO. *v.* KEPNER.

No. 20.   Reargued October 20, 1941.—Decided November 10, 1941.

*Messrs. Harry H. Byrer* and *Morison R. Waite,* with whom *Messrs. Cassius M. Clay* and *William A. Eggers* were on the brief, for petitioner.

*Mr. Samuel T. Gaines,* with whom *Mr. Edward M. Ballard* was on the brief, for respondent.

MR. JUSTICE REED delivered the opinion of the Court.

We have for decision in this case the question whether a state court may validly exercise its equitable jurisdiction to enjoin a resident of the state from prosecuting a cause of action arising under the Federal Employers' Liability Act in a federal court of another state where that Act gave venue, on the ground that the prosecution in the federal court is inequitable, vexatious and harassing to the carrier.

As the issue was deemed a federal question of substance,[1] undecided by this Court, and concerning which there was lack of uniformity in the state court decisions,[2] certiorari was granted, 312 U. S. 671, the decree below affirmed here by an equally divided court, 313 U. S. 542, and the petition for rehearing allowed, 313 U. S. 597.

---

[1] Judicial Code, § 237b.

[2] *McConnell* v. *Thomson*, 213 Ind. 16, 8 N. E. 2d 986, 11 N. E. 2d 183; *Reed's Admrx.* v. *Illinois Central R. Co.*, 182 Ky. 455, 206 S. W. 794.

This proceeding originally was brought by the petitioner, an interstate railroad, in the Court of Common Pleas of Hamilton County, Ohio, against the respondent Kepner, an injured resident employee, to enjoin his continued prosecution of a suit in the United States District Court for the Eastern District of New York under the Federal Employers' Liability Act for his injuries. The accident, according to the petition, occurred in Butler County, Ohio, a county adjacent to that of respondent's residence, through both of which counties petitioner's railroad ran. The petition further showed that suitable courts, state and federal, were constantly open and that petitioner and the witnesses were available for process therein. It was stated the federal court chosen was seven hundred miles from the residence of the respondent and numerous witnesses; that to present the case properly required the personal attendance of approximately twenty-five locally available witnesses—the crew, inspectors and the medical attendants—at a cost estimated to exceed the cost of the presentation of the case at a convenient point by $4,000, with no resulting benefit to the injured employee. Petitioner asserted these facts established that the continued prosecution of the federal court action would be an undue burden on interstate commerce and an unreasonable, improper and inequitable burden upon petitioner itself.

The defendant railroad was doing business in the New York district where the damage suit was filed, as appears from a copy of the complaint in the federal case made a part of the petition.

Respondent demurred for failure to state a cause of action and lack of jurisdiction of the subject of the action. The trial court sustained the demurrer and dismissed the action, by an order which was sustained by the Court of Appeals and, on rehearing, by the Supreme

Court of Ohio.[3] The basis for the decision below was that the respondent employee was privileged to enjoy, without interference from a state court, the venue allowed by the Federal Employers' Liability Act.[4]

The statutory provision in regard to venue is in § 6, which so far as pertinent reads as follows:

"Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." (Apr. 5, 1910, c. 143, § 1, 36 Stat. 291, as amended March 3, 1911, c. 231, § 291, 36 Stat. 1167; 45 U. S. C. § 56.

When the second Employers' Liability Act was enacted, venue of actions under it was left to the general venue statute, 35 Stat. 65, which fixed the venue of suits in the United States courts, based in whole or in part upon the Act, in districts of which the defendant was an inhabitant.[5] Litigation promptly disclosed what Congress considered deficiencies in such a limitation of the right of railroad employees to bring personal injury actions,[6] with the result that the present language was added.[7]

The reason for the addition was said to be the injustice to an injured employee of compelling him to go to the possibly far distant place of habitation of the defendant

---

[3] 137 Ohio St. 206, 28 N. E. 2d 586 and 137 Ohio St. 409, 30 N. E. 2d 982.

[4] 137 Ohio St. 409, 416, 30 N. E. 2d 982.

[5] First section of the act of March 3, 1875, 18 Stat. 470, as amended by the act of March 3, 1887, 24 Stat. 552, and act of August 13, 1888, 25 Stat. 433.

[6] *Cound* v. *Atchison, T. & S. F. Ry. Co.*, 173 F. 527; *Macon Grocery Co.* v. *Atlantic Coast Line R. Co.*, 215 U. S. 501, 506. Senate Report No. 432, 61st Cong., 2d Sess., p. 4.

[7] April 5, 1910, c. 143, 36 Stat. 291.

carrier, with consequent increased expense for the transportation and maintenance of witnesses, lawyers and parties, away from their homes.[8]   The legislative history throws little light on the reason for the choice of the three standards for determining venue: the residence of the carrier, the place where it is doing business, or the place where the cause of action arose.   At one time, the amendatory bill fixed venue as "the district of the residence of either the plaintiff or the defendant, or in which the cause of action arose, or in which the defendant shall be found at the time of commencing such action." [9]   Fears were expressed that so wide a choice might result in injustice to the carrier, p. 2257.   No doubt this language was actually considered by the Senate Judiciary Committee, as well as the language of the general venue statute for which the Committee was providing an exception.   Specific attention was called in the Senate report to the *Macon Grocery* case, interpreting the general venue statute.   That statute placed venue in the residence of either party, where the jurisdiction was founded on diversity of citizenship alone.   The language finally adopted must have been deliberately chosen to enable the plaintiff, in the words of Senator Borah, who submitted the report on the bill, "to find the corporation at any point or place or State where it is actually carrying on business, and there lodge his action, if he chooses to do so." [10]

When petitioner sought an injunction in the Ohio court against the further prosecution of the federal court action in New York, the petition alleged that prosecution of the New York action would entail "an undue burden" on interstate commerce.   No objection to the decree below, upon that explicit ground, appears in the petition for

---

[8] Senate Report No. 432, 61st Cong., 2d Sess., p. 4.

[9] Cong. Rec., 61st Cong., 2d Sess., Vol. 45, Pt. 3, p. 2253.

[10] *Id.*, Pt. 4, p. 4034.

certiorari, either in the specification of errors or reasons for granting the writ. In petitioner's brief on the merits, it is pointed out that this Court held in *Denver & R. G. W. R. Co.* v. *Terte,* 284 U. S. 284, that the disadvantages of litigation far from the scene of the accident are not substantial enough to justify a state court in forbidding the continuation of the litigation in a district where the lines of the carrier run. This accords with *Hoffman* v. *Missouri ex rel. Foraker,* 274 U. S. 21, where it was said the carrier must "submit, if there is jurisdiction, to the requirements of orderly, effective administration of justice, although thereby interstate commerce is incidentally burdened." [11] Since the carrier's exhibit of respondent's New York petition shows an allegation that it is doing business in New York, we assume that business to be such as is contemplated by the venue provisions of § 6. There is therefore no occasion to consider further the suggestion that the suit in New York creates an inadmissible burden upon interstate commerce.

The real contention of petitioner is that, despite the admitted venue, respondent is acting in a vexatious and inequitable manner in maintaining the federal court suit in a distant jurisdiction when a convenient and suitable forum is at respondent's doorstep. Under such circumstances, petitioner asserts power, abstractly speaking, in the Ohio court to prevent a resident under its jurisdiction

---

[11] Cf. *International Milling Co.* v. *Columbia Co.,* 292 U. S. 511, 517–21; *St. Louis, B. & M. Ry. Co.* v. *Taylor,* 266 U. S. 200, 207. *Davis* v. *Farmers Co-operative Co.,* 262 U. S. 312, is limited to its particular facts, 292 U. S. 511 at 517; *Michigan Central R. Co.* v. *Mix,* 278 U. S. 492, and *Atchison, T. & S. F. Ry. Co.* v. *Wells,* 265 U. S. 101, turn on the absence or inconsequential character of business done within the states where the railroads were sued. The *Mix* case is differentiated from the *Foraker* and *Taylor* cases because the carrier's lines or contracts did not run or call for performance in the territory over which the court where the objectionable action was filed had jurisdiction.

from doing inequity. Such power does exist.[12] In the *Matzinger* case, the Supreme Court of Ohio exercised this power to prevent the continuation of a personal injury suit in Illinois, by a resident under its jurisdiction, on an Ohio cause of action. Such power has occasionally been exercised by one state over its citizens, seeking to enforce in other states remedies under the Employers' Liability Act, against defendants locally available for the litigation.[13] At times the injunction has been refused.[14]

We read the opinion of the Supreme Court of Ohio to express the view that, if it were not for § 6 of the Employers' Liability Act, the requested injunction would be granted, on the undisputed facts of the petition. Section 6 establishes venue for an action in the federal courts. As such venue is a privilege created by federal statute[15] and claimed by respondent, the Supreme Court of Ohio felt constrained by the Supremacy Clause to treat § 6 as decisive of the issue. It is clear that the allowance or denial of this federal privilege is a matter of federal law, not a matter of state law under *Erie Railroad Co.* v. *Tompkins,* 304 U. S. 64, 72.[16] Its correct decision depends upon a construction of a federal act.[17] Consequently, the action of a state court must be in accord with the federal statute

---

[12] *New York, C. & St. L. R. Co.* v. *Matzinger,* 136 Ohio St. 271, 25 N. E. 2d 349; *Cole* v. *Cunningham,* 133 U. S. 107; *Simon* v. *Southern Ry. Co.,* 236 U. S. 115, 123.

[13] *Kern* v. *Cleveland, C., C. & St. L. Ry. Co.,* 204 Ind. 595, 185 N. E. 446; *Reed's Admrx.* v. *Illinois Central R. Co.,* 182 Ky. 455, 206 S. W. 794; *Ex parte Crandall,* 53 F. 2d 969.

[14] *Missouri-Kansas-Texas R. Co.* v. *Ball,* 126 Kan. 745, 271 P. 313; *Mobile & Ohio R. Co.* v. *Parrent,* 260 Ill. App. 284; *Lancaster* v. *Dunn,* 153 La. 15, 95 So. 385.

[15] *Neirbo Co.* v. *Bethlehem Corp.,* 308 U. S. 165.

[16] A contrary view as to injunctions against actions in state courts has been expressed. Roberts: Federal Liabilities of Carriers (2d Ed.) Vol. 2, § 962.

[17] *Cohens* v. *Virginia,* 6 Wheat. 264, 379.

and the federal rule as to its application, rather than state statute, rule or policy.[18]

Petitioner presses upon us the argument that the action of Congress gave an injured railway employee the privilege of extended venue, subject to the usual powers of the state to enjoin what in the judgment of the state courts would be considered an improper use of that privilege. This results, says petitioner, because the Act does not in terms exclude this state power.[19]  As courts of equity admittedly possessed this power before the enactment of § 6, the argument continues, it is not to be lightly inferred that the venue privilege was in disregard of this policy.  But the federal courts have felt they could not interfere with suits in far federal districts where the inequity alleged was based only on inconvenience.[20]  There is no occasion to distinguish between the power and the propriety of its exercise in this instance, since the limits of the two are here co-extensive.  The privilege was granted because the general venue provisions worked injustices to employees. It is obvious that no state statute could vary the venue;[21] and, we think, equally true that no state court may inter-

---

[18] *Calhoun Gold Mining Co.* v. *Ajax Gold Mining Co.*, 182 U. S. 499, 505; *Tullock* v. *Mulvane*, 184 U. S. 497, 505, 512–13; *Cincinnati, N. O. & T. P. Ry. Co.* v. *Rankin*, 241 U. S. 319, 326–27; *Chesapeake & Ohio Ry. Co.* v. *Martin*, 283 U. S. 209, 213; *Chesapeake & Ohio Ry. Co.* v. *Kuhn*, 284 U. S. 44, 47; *Federal Land Bank* v. *Priddy*, 295 U. S. 229, 231; cf. Roberts, *op. cit., supra.*

[19] *Federal Trade Commission* v. *Bunte Bros.*, 312 U. S. 349; *United States* v. *Darby*, 312 U. S. 100; *Hines* v. *Davidowitz*, 312 U. S. 52; *Kelly* v. *Washington*, 302 U. S. 1.

[20] *Chesapeake & Ohio Ry. Co.* v. *Vigor*, 90 F. 2d 7; *Baltimore & Ohio R. Co.* v. *Clem*, 36 F. Supp. 703, overruling *Baltimore & Ohio R. Co.* v. *Bole*, 31 F. Supp. 221.

[21] It was held in *Chicago, M. & St. P. Ry. Co.* v. *Schendel*, 292 F. 326, 327–32, that by virtue of the Supremacy Clause a state statute was unconstitutional which forbade the doing of any act to further litigation in another state, by testimony or otherwise, on a personal injury claim arising locally.

fere with the privilege, for the benefit of the carrier or the national transportation system, on the ground of inequity based on cost, inconvenience or harassment. When the section was enacted it filled the entire field of venue in federal courts.[22] A privilege of venue, granted by the legislative body which created this right of action, cannot be frustrated for reasons of convenience or expense. If it is deemed unjust, the remedy is legislative—a course followed in securing the amendment of April 5, 1910, for the benefit of employees. This Court held in *Hoffman* v. *Missouri ex rel. Foraker*, 274 U. S. 21, that the burden on interstate commerce would be disregarded where the carrier had lines in the distant state. The importance of unhampered commerce is at least as great as that of a carrier's freedom from harassing incidents of litigation. Whatever burden there is here upon the railroad, because of inconvenience or cost, does not outweigh the plain grant of privilege for suit in New York.[23]

*Affirmed.*

MR. JUSTICE FRANKFURTER, dissenting:

Disagreement with the views of the majority on the construction of a venue provision does not ordinarily call for expression. But inasmuch as the decision in this case unjustifiably limits long-settled powers of the state courts and thereby brings into disequilibrium the relationship of federal and state courts, I think it proper to express my views.

---

[22] Cf. *New York Central R. Co.* v. *Winfield*, 244 U. S. 147, 151.

[23] We do not think petitioner's attempted distinction between a prohibited injunction directed at the court and a permitted one directed at the parties is valid. An order to the parties forbidding prosecution would destroy venue effectually. *Oklahoma Packing Co.* v. *Gas Co.*, 309 U. S. 4, 9. Cf. *Hill* v. *Martin*, 296 U. S. 393, 403. *Steelman* v. *All Continent Corp.*, 301 U. S. 278, relied upon by petitioner, would be pertinent only if there were occasion for the state court to control federal venue. It would then be exercised against the parties.

The decision of the Court seems to be epitomized in this sentence: "A privilege of venue, granted by the legislative body which created this right of action, cannot be frustrated for reasons of convenience or expense." As a general proposition, the suggestion that a privilege of venue granted by the legislative body which creates the right of action "cannot be frustrated for reasons of convenience or expense" would be as novel as it is untenable. To give unique scope to this venue provision different from the significance accorded all other provisions of venue "granted by the legislative body which created" the right is no less novel doctrine. For this departure from the effect customarily given to venue provisions, no warrant is avouched in the specific provisions of the Federal Employers' Liability Act, the general provisions of legislation defining the relationship between federal and state courts, the principles applied in the decisions of this Court, or settled doctrines of equity jurisdiction. None is avouched because none is available.

The opinion does not deny the historic power of courts of equity to prevent a misuse of litigation by enjoining resort to vexatious and oppressive foreign suits. See *e. g.*, *Cole* v. *Cunningham*, 133 U. S. 107, 118–20; *Pere Marquette Ry. Co.* v. *Slutz,* 268 Mich. 388, 256 N. W. 458; *Mason* v. *Harlow,* 84 Kan. 277, 114 P. 218; *Wilser* v. *Wilser,* 132 Minn. 167, 156 N. W. 271; *Northern Pacific Ry. Co.* v. *Richey & Gilbert Co.,* 132 Wash. 526, 232 P. 355; *O'Haire* v. *Burns,* 45 Colo. 432, 101 P. 755; *Miller* v. *Gittings,* 85 Md. 601, 37 A. 372. Nor does it question the familiar doctrine of *forum non conveniens,* under which a court having statutory jurisdiction may decline its facilities to a suit that in justice should be tried elsewhere. See *Canada Malting Co.* v. *Paterson Co.,* 285 U. S. 413, 422–23; *Massachusetts* v. *Missouri,* 308 U. S. 1, 19; *Rogers* v. *Guaranty Trust Co.,* 288 U. S. 123, 130–31. These manifestations of a civilized judicial system are firmly imbedded

in our law. See Foster, *Place of Trial in Civil Actions,* 43 Harv. L. Rev. 1217; Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law,* 29 Col. L. Rev. 1. Nor does the decision give new currency to the discredited notion that there is a general lack of power in the state courts to enjoin proceedings in federal courts. Cf. *Princess Lida* v. *Thompson,* 305 U. S. 456, 466; Warren, *Federal and State Court Interference,* 43 Harv. L. Rev. 345. Nothing in Article III of the Constitution or in the legislation by which Congress has vested judicial power in the federal courts justifies such a doctrine.

And so the basis of the decision of the Court must be found, if anywhere, in the terms of the venue provision of the Federal Employers' Liability Act. The section provides, simply, that an action under the Act "may be brought in a District Court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action," that the jurisdiction of the federal courts shall be "concurrent" with that of the state courts, and that no action brought in a state court of competent jurisdiction shall be removed to a federal court. 36 Stat. 291; 45 U. S. C. § 56. The phrasing of the section is not unique: it follows the familiar pattern generally employed by Congress in framing venue provisions. *E. g.,* 28 U. S. C. § 112 (suits based upon diversity of citizenship); 28 U. S. C. § 53 (suits by or against China Trade Act corporations); 28 U. S. C. § 104 (suits for penalties and forfeitures); 28 U. S. C. § 105 (suits for recovery of taxes); 28 U. S. C. § 41 (26) (b) (interpleader). The decision cannot rest, therefore, upon any peculiarities of the language of the provision.

Nor can justification for the Court's conclusion be found in the legislative history of the section or the clearly expressed reasons of policy underlying its enactment. As the House and Senate committee reports show, H. Rept.

No. 513, pp. 6–7, S. Rept. No. 432, pp. 3–4, 61st Cong., 2d Sess., Congress was aware of the hardship by which, under the original Employers' Liability Act of April 22, 1908, 35 Stat. 65, the plaintiff could bring his action only at the railroad's "residence." *Cound* v. *Atchison, T. & S. F. Ry. Co.,* 173 F. 527. The amendment of 1910 greatly enlarged the range of a plaintiff's convenience in bringing suit. It is not disputed that the amendment was intended to open to a plaintiff courts from which he previously was barred. But that is not the question before us. The problem is whether the Act was intended to give a plaintiff an absolute and unqualified right to compel trial of his action in any of the specified places he chooses, thereby not only depriving state courts of their old power to protect against unjustly oppressive foreign suits, but also forbidding federal courts to decline jurisdiction "in the interest of justice" on familiar grounds of *forum non conveniens.* See *Canada Malting Co.* v. *Paterson Co.,* 285 U. S. 413, 422–23. Nothing in the history of the 1910 amendment indicates that its framers contemplated any such vast transformation in the established relationship between federal and state courts and in the duty of the federal courts to decline jurisdiction "in the interest of justice." On the contrary, the expressed considerations of policy underlying the amendment were fundamentally the same as those underlying the equitable power to restrain oppressive suits and the reciprocal doctrine of *forum non conveniens:* It does not comport with equity and justice to allow a suit to be litigated in a forum where, on the balance, unnecessary hardship and inconvenience would be cast upon one party without any compensatingly fair convenience to the other party, but where, on the contrary, the suit might more conveniently be litigated in another forum available equally to both parties.

This doctrine of justice applies with especially compelling force where the conveniences to be balanced are not

merely conveniences of conflicting private interests but where there is added the controlling factor of public interest. The so-called "convenience" of a railroad concerns the important national function of which the railroads are the agency. As in other phases of federal railroad regulation, the interests of carriers, employees, and the public must be balanced. Because of the "direct concern of the public" in maintaining an economic and efficient railroad system, a unanimous Court, speaking through Mr. Justice Brandeis, held that a carrier may not be sued by a plaintiff where, under the circumstances of the particular facts, such suit would impose an unfair burden upon railroads and thereby upon the nation. *Davis* v. *Farmers Co-operative Co.*, 262 U. S. 312. The declaration by Congress that a court has jurisdiction and venue is not a command that it must exercise its authority in such a case to the unnecessary injury of a defendant and the public. This doctrine has been consistently followed in a series of unanimous decisions. *Atchison, T. & S. F. Ry. Co.* v. *Wells*, 265 U. S. 101; *Michigan Central R. Co.* v. *Mix*, 278 U. S. 492; *Hoffman* v. *Foraker*, 274 U. S. 21; *Denver & R. G. W. R. Co.* v. *Terte*, 284 U. S. 284.[1] Of course, Congress, if it chose, could subject interstate carriers to the jurisdiction of the state courts, even in the situations in which this Court found that assumption of jurisdiction would be an injustice to the public. But Congress has not expressed a different view of the governing public interest—and these cases stand as unchallenged

[1] *International Milling Co.* v. *Columbia Co.*, 292 U. S. 511, did not restrict but expressly recognized the doctrine of the *Davis* case. In finding the scope of the *Davis* doctrine in the circumstances which gave rise to it, the opinion in the *Milling Co.* case only followed traditional technique in the use of precedents. It made precisely the same differentiation that Mr. Justice Brandeis, who articulated the doctrine in the *Davis* case, made in applying the principle of the case to subsequent situations. See *St. Louis, B. & M. Ry. Co.* v. *Taylor*, 266 U. S. 200, and *Hoffman* v. *Foraker*, 274 U. S. 21. The doctrine itself stands unchallenged. The present decision does not challenge it.

authorities that, notwithstanding the provision of the Federal Employers' Liability Act conferring unqualified "concurrent jurisdiction" upon the state courts, a plaintiff may in some circumstances be barred from bringing his suit in one of the places specified by the Act. In this respect, at least, a plaintiff's "privilege of venue, granted by the legislative body which created this right of action," *can* "be frustrated for reasons of convenience or expense."

The opinion of the Court attaches importance to a phrase taken from Senator Borah's remarks on the floor of the Senate in submitting the bill to amend the Act: "The bill enables the plaintiff to find the corporation at any point or place or State where it is actually carrying on business, and there lodge his action, if he chooses to do so." 45 Cong. Rec. 4034. The context of this statement is set out in the footnote.[2]

The intrinsic difficulties of language and the emergence, after enactment, of situations not anticipated by even the

---

[2] "Mr. President, I wish to discuss very briefly the bill. The bill as it is now pending provides for three amendments to the employers' liability law which is now upon the statute books. The first has reference to the venue . . . The objection which has been made to the existing law, and this objection arises by reason of the decision of some of the courts, is that the plaintiff may sometimes be compelled to go a great distance in order to have his cause of action against the defendant by reason of the fact that now the action must be brought in certain instances in the district in which the defendant is an inhabitant. In other words, the corporation being an inhabitant of the State which creates it, it might follow that the plaintiff would have to travel a long distance in order, under certain conditions, to bring his action against the defendant and come within the terms of the law. So, if this bill should be passed the law will be remedied in that respect, in enabling the plaintiff to bring his action where the cause of action arose or where the defendant may be doing business. The bill enables the plaintiff to find the corporation at any point or place or State where it is actually carrying on business, and there lodge his action, if he chooses to do so." 45 Cong. Rec. 4034.

most gifted legislative imagination reveal the doubts and ambiguities in statutes that so often compel judicial construction. To illumine these dark places in legislative composition all the sources of light must be drawn upon. But the various aids to construction are guides of experience, not technical rules of law. See *Boston Sand Co.* v. *United States,* 278 U. S. 41, 48. One of the sources which may be used for extracting meaning from legislation is the deliberative commentary of the legislators immediately in charge of a measure. Contemporary answers by those authorized to give answers to questions raised about the meaning of pending legislation obviously go a long way to elucidating doubtful legislative purpose. But this rule of good sense does not mean that every loose phrase, even of the proponent of a measure, is to be given the authority of an encyclical. The language of a chairman of a committee, like the language of all people, is merely a symbol of thought. A speaker's casual, isolated general observation should not be tortured into an expression of disregard for an established, far-reaching policy of the law. Especially in the case of Senator Borah, such imputation should not be made. As is well known, he eyed most jealously the absorption of state authority by extension of federal power. It would have been easy to vest the enforcement of the Federal Employers' Liability Act entirely in the federal courts. Instead, not only was concurrent jurisdiction given to the state courts in the enforcement of this federal right, but removal of a state action to the federal courts was prohibited. Instead of being deemed hostile to the purposes of the Federal Employers' Liability Act and not to be entrusted with its administration, the state courts were accepted as the most active agencies for its enforcement. And yet, although nowhere in the course of the whole legislative history of the Act in question—the hearings, the reports in both houses, the debates on the floor—is there the slightest intimation that the problem before us entered the mind of any legis-

lator, we are asked to attribute to Senator Borah the uprooting of a doctrine which is an old and fruitful part of the fabric of the law of the states as well as the law of the land, by a general observation which has no relation to this doctrine and to which respectful meaning can be given without such distortion.

To read the venue provision of the Act as do the majority of the Court, is to translate the permission given a plaintiff to enter courts previously closed to him into a withdrawal from the state courts of power historically exercised by them, and into an absolute direction to the specified federal and state courts to take jurisdiction. The implications of such a construction extend far beyond the situation we now have here, of an attempt by a state court to enjoin an action brought in a federal court sitting in another state. It seems to be generally held that the grant to the state courts of jurisdiction concurrent with the federal courts does not deprive one state court of the power to enjoin an oppressive suit under the Act in a foreign state court.[3] Moreover, this Court has expressly held that the venue provision of the Employers' Liability Act does not prevent a state court from declining jurisdiction as a *forum non conveniens. Douglas* v. *New York, N. H. & H. R. Co.,* 279 U. S. 377. To be sure, under the guise of applying local doctrines of equity jurisdiction, a state court cannot defeat the proper assertion of a federal right.

---

[3] See *Reed's Admrx.* v. *Illinois Central R. Co.,* 182 Ky. 455, 206 S. W. 794; *Chicago, M. & St. P. Ry. Co.* v. *McGinley,* 175 Wis. 565, 185 N. W. 218; *State ex rel. New York, C. & St. L. R. Co.* v. *Nortoni,* 331 Mo. 764, 55 S. W. 2d 272; *Kern* v. *Cleveland, C., C. & St. L. R. Co.,* 204 Ind. 595, 185 N. E. 446, with which compare *McConnell* v. *Thomson,* 213 Ind. 16, 8 N. E. 2d 986, 11 N. E. 2d 183; cf. *Ex parte Crandall,* 53 F. 2d 969. The lower federal courts have usually declined to enjoin suits under the Act brought in other federal courts. See *Rader* v. *Baltimore & Ohio R. Co.,* 108 F. 2d 980, 985–86; *Chesapeake & Ohio Ry. Co.* v. *Vigor,* 90 F. 2d 7; *Southern Ry. Co.* v. *Cochran,* 56 F. 2d 1019, 1020.

Resort to this Court may always be had to lay bare such an unwarranted frustration. *American Railway Express Co.* v. *Levee,* 263 U. S. 19; *Davis* v. *Wechsler,* 263 U. S. 22. But such supervisory power by this Court over the determination of federal rights by state courts does not imply the denial of power in the state courts to make such determinations in the first instance. *Second Employers' Liability Cases,* 223 U. S. 1, 56–57; *Claflin* v. *Houseman,* 93 U. S. 130, 136–37; *Robb* v. *Connolly,* 111 U. S. 624, 637; cf. Warren, *Federal Criminal Laws and State Courts,* 38 Harv. L. Rev. 545, 596–97. The long history of leaving the effective enforcement of federal rights to state courts has proceeded on recognition of the power of the state courts to exercise in the first instance their settled doctrines of law and equity. The opinion of the Court ignores these settled principles. In an area demanding the utmost judicial circumspection, dislocating uncertainty is thereby introduced.

If the privilege afforded a plaintiff to bring suit under the Employers' Liability Act in one place rather than in another is to be regarded as an absolute command to the federal courts to take jurisdiction regardless of any considerations of justice and fairness, why is not the same effect to be given the comparable general venue provisions of § 51 of the Judicial Code, 28 U. S. C. § 112? Nothing in the language or the history of the venue provision of the Act differentiates it from the numerous other venue provisions of the Judicial Code. Is the settled doctrine of *forum non conveniens* to be deemed impliedly repealed by every such venue provision? Surely, it is much more consonant with reason and right to read venue provisions in the familiar context of established law rather than to impute to Congress an unconsidered, profound alteration in the relationship between the federal and the state

courts and in the relations of the federal courts *inter se.* Cf. *Gay* v. *Ruff*, 292 U. S. 25.

The CHIEF JUSTICE and MR. JUSTICE ROBERTS join in this opinion.

