## KELLEY v. AMERICAN SUGAR REFINING CO.

### No. 3912.

Circuit Court of Appeals, First Circuit.

Nov. 29, 1943.

Patrick Henry Kelley and Daniel J. Lyne, both of Boston, Mass. (Lyne, Woodworth & Evarts, of Boston, Mass., of counsel), for appellant.

Richard Wait, of Boston, Mass. (John L. Hall, of Boston, Mass., of counsel), for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and HEALEY, District Judge.

MAHONEY, Circuit Judge.

This action was brought by the plaintiff, a citizen of Massachusetts, against the defendant, a New Jersey corporation, conducting a sugar refinery in Boston, to recover the sum of $24,500 being the par value of two hundred shares of the general stock and the alleged proportionate share of the earned surplus of the corporation as of January 10, 1941. Jurisdiction is based on diversity of citizenship. The defendant filed a motion to dismiss on the ground that the district court had no jurisdiction and that even if it had it should decline to exercise it because it would be interfering with the internal affairs of a foreign corporation. The lower court granted the motion on the second ground and entered its judgment dismissing the complaint without prejudice. The plaintiff has appealed.

The following allegations are made in the complaint: The defendant corporation was organized on January 10, 1891, under the corporation law of the State of New Jersey approved April 7, 1875, and has an authorized capital stock of $90,-000,000 outstanding, made up of 450,000 shares of preferred and the same number of shares of common stock, each of which has a par value of $100 per share. The provision of the then existing corporation law of New Jersey limiting the life of a corporation to a period of fifty years was made a part of its articles of incorporation. The articles provided that the corporation was to begin business on the 10th day of January, 1891, and terminate on the 10th day of January, 1941, and that the preferred stock was to be entitled to a cumulative dividend of 7% payable from the surplus or net profits arising from the business of the corporation semi-annually on January 2 and July 2 each year and was to be entitled to no dividends beyond the said 7%. The plaintiff purchased two hundred shares of fully paid general stock in 1930. The balance sheet of December 31, 1940, shows an earned surplus of $10,-142,226.26, and there was no substantial change in the financial condition between that date and January 10, 1941. At a meeting of the stockholders November 20, 1940, it was voted to extend the life of the corporation for a new period of fifty years. Having investigated the financial condition of the corporation and its business prospects, the plaintiff voted against this extension. The corporation was able to pay its dividends on its preferred stock for the years 1938 and 1939 only by incurring a deficit of $3,200,000 for those years, the dividends having been paid out of the earned surplus as provided in the articles of incorporation under the laws of the State of New Jersey. The business of the corporation indicates that future payments of preferred dividends will further reduce the earned surplus. All dividends due on the preferred stock having been paid up to and including January 2, 1941, the holders of that stock had no further right to share in the earned surplus after January 10, 1941, the date on which the period for their investment expired. After voting against the proposal to extend the life of the corporation, the plaintiff gave notice to the corporation that his contract as represented by his shares of stock expired by its terms on January 10, 1941, and the corporation became liable to him for the full value of his shares as of that date. By the law of New Jersey, the general stockholders from and after January 2, 1941, acquired a vested and exclusive contract right to be paid their proportionate share of the earned surplus on January 10, 1941, and the plan to extend the existence of the corporation was illegal, void and inoperative as against the plaintiff, a non-assenting voter, in that it violated his vested contract rights to his proportionate share of the earned surplus. The plaintiff is entitled by New Jersey law to be paid the par value of his stock plus $22.50 per share, the proportionate share of that stock in the earned surplus. This action is brought to enforce that right.

The plaintiff contends that the lower court was in error in declining to exercise its jurisdiction and should have heard the case on its merits.

We shall first determine whether the court has jurisdiction over this action. It is stated in the motion to dismiss that:

"The plaintiff alleges in the complaint that jurisdiction of the court is claimed solely upon diversity of citizenship of the parties and that he seeks to recover on a common law contract made in New Jersey. From the allegations of the complaint

it appears that said alleged contract was made with persons other than the plaintiff whose rights thereunder the plaintiff seeks to recover upon by reason of his alleged purchase of stock in the defendant corporation in 1930. There are no allegations in the complaint showing the citizenship of any person under whom the plaintiff claims as aforesaid. The complaint consequently does not contain sufficient allegations showing that the court has jurisdiction under the provisions of section 24 of the Judicial Code, as amended, U.S.Code, Title 28, Section 41(1)." [1]

The defendant says that it does not contend that in every action between a stockholder and his corporation the plaintiff who has bought his stock after the original issue sues as assignee of the original holder, but limits its contention to the peculiar facts in the instant case where suit is brought on the contract made between a corporation and its shareholders before the plaintiff became a stockholder.

We are by no means convinced that the allegations of the complaint indicate that the plaintiff's shares were held by another before him. Even if we assume the defendant's contention to be sound, however, when the corporation cancelled the shares of the assignor, transferred them on its books into the name of the assignee, and issued new certificates to him, there was a novation as regards the contract between the corporation and the shareholder. A novation takes the case out of the "assignee clause". American Colortype Co. v. Continental Colortype Co., 1903, 188 U.S. 104, 23 S.Ct. 265, 47 L.Ed. 404. Obviously then, the allegations in the complaint as to diversity of citizenship are sufficient.

The decision of the district court in declining to exercise jurisdiction was proper. It relied on Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720, the leading case on the doctrine of forum non conveniens. But the plaintiff argues that that case by reason of the dissenting opinions therein is no longer controlling. The Supreme Court there said, 288 U.S. at page 130, 53 S.Ct. at page 297, 77 L.Ed. 652, 89 A.L.R. 720:

"It has long been settled doctrine that a court—state or federal—sitting in one state will, as a general rule, decline to interfere with, or control by injunction or otherwise, the management of the internal affairs of a corporation organized under the laws of another state but will leave controversies as to such matters to the courts of the state of the domicile."

While the strong dissenting opinions throw doubt on the applicability of the doctrine of forum non conveniens to the facts of that case, they leave the rule itself intact for application to a proper case. [2] The considerations which prompted Justice Stone to dissent from the refusal to hear the Rogers case on the merits were that the facts showed fraud on the part of the defendant American Tobacco Company's officers in their management of the corporation as well as the inability of the plaintiff to secure a complete remedy in New Jersey, the domicile of the corporation, in that all the parties were not "amenable to process" in New Jersey whereas they were so amenable in New York, where the case was brought. He said, 288 U.S. at page 147, 53 S.Ct. at page 304, 77 L.Ed. 652, 89 A.L.R. 720:

"In New York also the individual defendants and the trust company can be reached by injunction pendente lite, restraining the transfer to innocent purchas-

---

[1] 28 U.S.C.A. § 41(1). "* * * No district court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made * * *."

[2] It is to be noted that Chief Justice Stone, who, as an Associate Justice, wrote one of the dissenting opinions therein, concurred in the dissenting opinion in Baltimore & O. R. Co. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222, where Justice Frankfurter cited Rogers v. Guaranty Trust Co. for the proposition that the doctrine of forum non conveniens is sound law. See also reference by Justice Stone in Commonwealth of Pennsylvania v. Williams, 1935, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166.

Meredith et al. v. City of Winter Haven et al., 64 S.Ct. 7, 88 L.Ed. ——, decided by the Supreme Court November 8, 1943, and cited by the plaintiff is not in point. The court there held that the federal district court sitting in Florida must exercise its jurisdiction in an action brought against a Florida municipal corporation.

ers of the stock, certificates for which are already issued and in the hands of the trust company. Under the circumstances of this case, only considerations of more compelling force than the possibility of inconsistent decrees should lead a forum, convenient in so many respects, to decline jurisdiction."

And Justice Cardozo, also dissenting, said, 288 U.S. at page 151, 53 S.Ct. at page 305, 77 L.Ed. 652, 89 A.L.R. 720:

"The doctrine of forum non conveniens is an instrument of justice. Courts must be slow to apply it at the instance of directors charged as personal wrongdoers, when justice will be delayed, even though not thwarted altogether, if jurisdiction is refused. At least that must be so when the wrong is clearly proved. The overmastering necessity of rebuking fraud or breach of trust will outweigh competing policies and shift the balance of convenience."

■ In the instant case we have no such conditions as led to the dissents there. No fraud or other such inequitable conduct on the part of the defendant is here involved nor can this court afford the plaintiff a more adequate remedy than the courts of New Jersey. On the other hand, strong reasons for the application of the doctrine are here present. A decision on the merits rests not on common law but on the construction of several of the New Jersey corporation statutes, from that of 1875, under which defendant was incorporated, down to that of 1937. The question involved which rests on those statutes and the decisions thereunder is novel, complicated and difficult.

The basis of plaintiff's determination to vote against the continued existence of the corporation was his belief that the prospective earnings value of his shares was less than their book value. Those who voted for continued existence of the corporation might have come to the same conclusion that he did. But they might well have been led so to vote because of the realization that the liquidation value, should the corporate existence terminate, would have been far less than the prospective earnings value. If that be the case, to allow the plaintiff to recover the book value which he seeks would be to allow him to take from the corporation a far greater share of the assets than his true proportionate interest. Hence a

judgment for the plaintiff, if judgment be for the plaintiff at all, would require the ascertainment of methods of computing liquidation value, which problem would be much better left to the courts of New Jersey.

This same action in the form of a bill in equity was before the Supreme Judicial Court of Massachusetts in Kelley v. American Sugar Refining Co., 311 Mass. 617, 42 N.E.2d 592. The court there held that that was a proper case in which to refuse to exercise jurisdiction.

The plaintiff's contention that this suit being one on a contract does not involve the internal affairs of a foreign corporation is without merit. Cohen v. American Window Glass Co., 2 Cir., 1942, 126 F.2d 111. We think this is a clear case for the application of the doctrine of forum non conveniens.

The judgment of the District Court is affirmed with costs to appellee.