## AKERLY v. NEW YORK CENT. R. CO.
### No. 10585.

Circuit Court of Appeals, Sixth Circuit.
June 14, 1948.

M. C. Harrison, of Cleveland, Ohio (Marvin C. Harrison and Harrison, Thomas, Spangenberg & Hull, all of Cleveland, Ohio, on the brief), for appellant.

Paul Lamb of Cleveland, Ohio (Paul Lamb, of Cleveland, Ohio, on the brief), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from an order of the District Court sustaining a motion to dismiss an action for personal injuries, upon

the ground of improper venue. The facts are presented mainly by deposition and physical exhibits, and are not controverted.

The appellant was employed by the appellee as an engine hostler. He was injured in Wesleyville, a suburb of Erie, Pennsylvania, while working on the tender of a locomotive. He filed an action alleging that while he was engaged in filling the tender with water, the locomotive was suddenly started without warning, causing him to be seriously injured.

The case arises under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., 45 U.S.C.A. § 51 et seq.

The accident occurred on May 14, 1945, and appellee's claim agent called upon the appellant several times, in the course of which negotiation appellant asked for some money as an advance for "living expenses." Appellant's claim agent said: "He asked me if we could help him out * * * he asked me if the company would allow him something to help him out on his expenses. * * * I told him I would put it up to the company to see what they would be willing to do. * * * I believe he asked for 50 or 75 dollars. * * * I told him I would try to get the money for him." The claim agent testified that a couple of weeks later "after some little preliminary conversation I told him that the company had made an allowance of fifty bucks * * * for expenses; to help him out on his expenses."

The claim agent brought the appellant $50 for living expenses, and at the same time told him that "in order to get this money we would have to have a little agreement signed up." The appellant read and signed the following agreement:

"Agreement for Advancement of Funds

"At my request, the New York Central Railroad Company has advanced to me the sum of Fifty Dollars ($50.00), receipt of which is hereby acknowledged, for living and other expenses while I am disabled from work by reason of personal injury sustained by me, at or near Wesleyville, Pa., on or about the 14th day of May, 1945.

"In consideration of said advancement I agree with the said Railroad Company that I will endeavor, in good faith, to adjust and settle any claim I may have for my injuries without resorting to litigation. If my claim cannot be so adjusted, then in further consideration of said advancement, I promise and agree that I will not start suit against the said Railroad Company to recover damages for my injuries in any courts, either Federal or State, except those sitting within the State where my injuries were sustained or within the State where I resided at the time of my injury, and I covenant with the said The New York Central Railroad Company that I will not start suit against it for damages on account of my said injuries in any court sitting outside of the State of my residence at the time of the said injuries or outside of the State wherein my said injuries occurred.

"Dated at Erie, Pa., this 18th day of February, 1946.

"Blaine F. Akerly."

It does not appear that any later advance of expenses was made, and on January 31, 1947, the appellant filed an action in the Northern District of Ohio, Eastern Division. A motion to dismiss was filed, based upon the above agreement, and the District Court dismissed the action.

The appellant contends (1) that the agreement was void under § 5 of the Federal Employers' Liability Act, 45 U.S.C., § 55, 45 U.S.C.A. § 55, and (2) that it was void for want of consideration.

The pertinent portions of § 5 and § 6 of the statute read as follows:

Sec. 5. "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."

Sec. 6. "Under this chapter an action may be brought in a district court of the

United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action."

As is evident, § 6 of the Act gives an injured railroad employee three separate and distinct choices as to the district in which he will file his action.

The contract signed by appellant agreed that the suit should be filed only in the district where the appellant was injured, and the principal question is whether this contract attempted to exempt the appellee from any liability created by the Act.

The Employers' Liability Act of 1908, which was held valid in the Second Employers' Liability Cases, 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44, did not include the present venue provisions of § 6. Venue under that Act was covered by the general provisions of the federal venue statutes 28 U.S.C., § 112, 28 U.S.C.A. § 112. The present provision was added by amendment in 1910, and as declared in Baltimore & Ohio Rd. Co. v. Kepner, 314 U.S. 44, 53, 62 S.Ct. 6, 10, 86 L.Ed. 28, 136 A.L.R. 1222, the statute was broadened because "the general venue provisions worked injustices to employees." The later and broader venue provisions were in large part waived by the appellant in the contract signed in connection with the advance for living expenses. If this contract, which was secured by the appellee from a man who obviously was in need of financial assistance, is a device to create exemption from liability it is invalid. Davis v. Crane, 8 Cir., 12 F.2d 355, 358.

The case authority on this question is in sharp conflict. District Courts in Missouri, Illinois, and Minnesota, and the Supreme Court of Minnesota, have held that such contracts are valid. Herrington v. Thompson, D.C., 61 F.Supp. 903; Roland v. Atchison, Topeka & Santa Fe Ry. Co., D.C.Ill., 65 F.Supp. 630; Clark v. Lowden, D.C.Minn., 48 F.Supp. 261; Detwiler v. Lowden, 198 Minn. 185, 269 N.W. 367, 838, 107 A.L.R. 1054, 1059. District Courts in Illinois, Minnesota, and Iowa, and the Supreme Court of Utah, have held that such contracts are invalid. Sherman v. Pere Marquette Ry. Co., 7 Cir., 62 F.Supp. 590; Fleming v. Husted, D.C.Iowa, 68 F.Supp. 900; Petersen v. Ogden Union Ry. & Depot Co., Utah, 175 P.2d 744. Cf. Porter v. Fleming, D.C.Minn., 74 F.Supp. 378. In the latter case the contract was very similar to the one herein involved. With due respect for the courts first named, we think that the latter cases state the sounder rule, and that under the clear intendment of the Act this contract is void.

Under the conceded facts, it is a fair inference that the appellee regarded this contract as important for the sake of exempting itself from the liability of being sued in New York, the state of its residence, or in any of the states, other than Pennsylvania, where it does business. Section 6 creates new and important rights in the employee and it created corresponding liabilities against the employer. Appellee argues that liability, within the meaning of the Act, is the determination of the obligation of the appellee to pay damages, and that it is in no way affected by the place or forum of trial. But liability is an ordinary word, to be construed according to its ordinary meaning. The second, and more limited definition of the words, as found in Webster's Unabridged Dictionary (2d ed.), 1935, is in substance that urged by the appellee; but the first, and more inclusive definition is "The state or quality of being liable." Liable, in turn, is defined as being "bound or obliged in law or equity; responsible; * * * answerable or exposed to a certain contingency or casualty of an undesired character." Within these definitions, the appellee was liable under § 6 of the Act to be sued in any one of three jurisdictions: that of its residence, that where the accident occurred, that where it does business. In fact this new venue statute creates, within the ordinary meaning of the word, liability against the employer in states and districts, where he could not have been sued prior to the amendment. The paragraph is broad and sweeping, and as pointed out in Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 424, 86 L.Ed. 575, the adoption of the section in its present form "argues persuasively that Congress wanted Section 5 to have the full effect that its comprehensive phraseol-

ogy implies." As specifically held in the cited case, § 5 is applicable to existing causes of action.

We think that the inclusion of this section in the Employers' Liability Act, with its creation of new obligations against the employer, makes the venue provision an inherent part of the employer's liability. An attempt to limit it by contract is an attempt to exempt the railroad from liability, and is void.

■ The contract signed was not a release, compromise or settlement of the cause of action either in whole or in part, and therefore Callen v. Pennsylvania Rd. Co., 332 U.S. 625, 68 S.Ct. 296, relied on by the appellee, has no application.

■ Also we think that public policy prohibits the recognition and enforcement of such contracts limiting the right of parties in their access to the courts. Like the rights bestowed upon employees under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., the rights of the employee under the Federal Employers' Liability Act are statutory rights "conferred on a private party, but affecting the public interest." It was held in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 900, 89 L.Ed. 1296, that such rights may not be released or waived.

■ The contract to waive the venue provisions is of no effect also because there was no consideration for it. The District Court agreed that the sum paid was not in itself consideration, since it was to be considered an advance, and hence was deductible from the amount of the final settlement. The finding that the sum was to be considered an advance is clearly correct, for the railroad, which drew the contract, headed it "Agreement for Advancement of Funds," and stated that at appellant's request the railroad had "advanced" the sum of $50. The specific provision of § 5 of the Act making this amount deductible from the final settlement, under the well-established rule is read into and made part of the contract of the parties. In light of this finding, and in view of the appellee's acknowledgment, implicit in the wording of the contract which it secured, that it owed the appellant more than $50, nothing was paid for the promise to limit the venue.

The judgment of the District Court is reversed and the case is remanded for further proceedings in accordance with this opinion.

MILLER, Circuit Judge, (dissenting).

The case involves a question of venue, rather than jurisdiction or liability. It is settled that venue provisions, being for the benefit of the parties, can be waived. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 63 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437. Regardless of statutory venue provisions, the parties can select their trial court, providing the court selected has jurisdiction of the subject matter and the defendant. See Industrial Association v. Commissioner, 323 U.S. 310, 313, 65 S.Ct. 289, 89 L.Ed. 260. Unless Section 5 of the Act changes the rule in this particular type of case, the agreement in this case, if supported by consideration, is valid.

I do not construe a contract, merely restricting venue not unreasonably, as being a contract or device by the carrier "to exempt itself from any liability created by" the act. Herrington v. Thompson, D.C., 61 F.Supp. 903, 904; Clark v. Lowden, D. C., 48 F.Supp. 261; Roland v. Atchison, T. & S. F. Ry. Co., D.C., 65 F.Supp. 630. Under such a contract the carrier's "liability" in its entirety still exists, and can be enforced by the employee in a court provided by the statute. The statute gives the employee a selection of venue, which selection is exercised when suit is filed. Under the contract in question he makes the selection at an earlier time. No question is involved about the selection being an unreasonable one, or operating as a hardship in any way on the employee, or being procured by fraud, misrepresentation, or duress in any degree.

Exemption from liability is entirely different from a settlement either in whole or in part of an existing liability. See Bay State Dredging & Contracting Co. v. Porter, 1 Cir., 153 F.2d 827, 832; Duncan v. Thompson, 315 U.S. 1, 62 S.Ct. 422, 86 L. Ed. 575. In Callen v. Pennsylvania R. R. Co., 332 U.S. 625, 68 S.Ct. 296, the Su-

preme Court held that a release secured by a carrier of an existing liability under the Act was not a device to exempt itself from liability barred by Section 5 of the Act. The majority opinion in the present case construes the venue provisions of Section 5 as part of the carrier's "liability" under the Act. If the carrier's entire liability can be settled, it would seem that a portion of it could likewise be settled.

I also believe that the contract is supported by consideration. The $50.00 was not a part payment of any admitted liability, but was advanced "for living and other expenses." There is no provision that it was to be credited on any judgment or settlement that the employee might obtain. In any event, there was no obligation on the carrier to pay *at that time* whatever ultimately might be agreed upon or adjudged by the court. Payment in advance of the time when it is legally due constitutes good consideration.