POOLE *v.* MISSISSIPPI PUBLISHERS CORPORATION.

In Banc.    Feb. 13, 1950.

No. 37383  (44 So. (2d) 467)

Chill, Landman & Gordon, and Marvin A. Cohen, for appellant.

P. H. Eager, Jr., H. V. Watkins, Thos. H. Watkins and
W. H. Watkins, for appellee.

**Smith, J.**

The appellee was the complainant below, and is "a corporation organized under and existing by virtue of the laws of the State of Delaware but duly qualified and authorized to do business in the State of Mississippi with its principal place of business in the City of Jackson, in Hinds County, Mississippi; has designated an agent for service of process in the person of H. V. Watkins, an adult resident citizen of the City of Jackson, Hinds County, Mississippi, and is subject to suit at any time in the Courts of Hinds County, Mississippi, . . ."

The appellant was the defendant below, and is an adult resident citizen of Hinds County, Mississippi.

The question presented to us on this appeal involves two issues, the power of the chancery court to grant the relief within equity jurisprudence; and the propriety of doing so under the circumstances of this particular case.

The exact inquiry is whether or not we should affirm the decree of the chancery court permanently enjoining appellant from suing appellee in a tort action in the state of its domicile, when it is subject to the same suit in the courts in the State of Mississippi, where the courts are open to a plaintiff for suit against a nonresident corporation qualified to do business in our State under Section 5319, Code 1942; where the tort is alleged to have occurred; where the witnesses reside; the records are conveniently available; and much expense and inconvenience will be incurred by a defendant if he is forced to defend under these and other inequitable circumstances and conditions in the foreign forum, as will appear later in this opinion. The appellee here has its principal place of business in the City of Jackson, Mississippi, as

well as its business office, and all of its directors, officers and business employees reside in Mississippi.

Appellee filed its original bill in the Chancery Court of Hinds County against appellant, seeking to enjoin him from filng suit against it in the State of Delaware. Appellant filed an answer and two demurrers, designating one as a special demurrer and the other as a general demurrer, whereas as a matter of law the grounds of both were within the category of general demurrers, otherwise we could not review the action of the court on the miscalled special demurrer, since special demurrers deal with procedural and adjectival matters, and do not put principles at issue. The chancellor overruled the demurrers and a motion to dissolve the injunction, based thereon. An appeal was granted to settle all the general controlling principles of the case.

The original bill averred that appellant contended that the issue of the Jackson Daily News, published by appellee, on March 10, 1948, contained a libelous statement with reference to him; that appellant had made demand on appellee for damages because of said alleged libel; that appellee denied appellant was entitled to damages because of any statement made in said newspaper on said date; and denied that appellant had any valid cause of action against appellee because thereof. It was claimed, while denying liability, that if appellant had a right of action, he had free access to the courts in Hinds County, wherein full redress might be had by him, if so entitled. It was further charged that when appellees rejected his claim for damages, appellant threatened to file suit against appellee in Wilmington, New Castle County, in the State of Delaware, it being claimed that his sole purpose was thereby to subject appellee to extremely expensive litigation, and other inequities.

The bill of complaint further charged that unless enjoined, appellant would immediately file such suit in Delaware, thereby unfairly imposing upon appellee inconvenient, expensive and harassing litigation in a dis-

tant jurisdiction. These elements are described in detail, which we deem necessary to set out here, because the demurrer admits them all to be true. We quote, therefore, from the original bill, as follows:

"That Wilmington, Delaware is by direct air route approximately 960 miles from Jackson, Mississippi, and that there are no means of transportation which goes directly from Jackson, Mississippi, to Wilmington, Delaware, and that by the nearest routes served by common carriers a person traveling from Jackson, Mississippi, to Wilmington, Delaware, would be required to travel approximately 1200 miles; that unless the defendants are restrained and enjoined from instituting and prosecuting said suit against complainant in Delaware, the complainant will be required to transport and maintain a majority of its officers and approximately thirty (30) witnesses from their domicile at Jackson, Mississippi, to Wilmington, Delaware, in order to properly defend said suit at excessive, burdensome and unreasonable expense; that a number of said witnesses will have to be brought from Jones County, Mississippi, to Wilmington, Delaware, which is an additional hundred miles distance; that the round trip train fare for one person from Jackson, Mississippi, to Wilmington, Delaware is $109.21; that the round trip fare for one person from Jackson, Mississippi, to Wilmington, Delaware, by commercial air lines is approximately $143.99; that the cost of maintaining said witnesses while en route to Wilmington, Delaware, and while there during the trial would be not less than $10.00 per witness per day; that for each person who left Jackson, Mississippi, as a witness in said suit would be required to be away from his home, work and occupation for at least one week; that the cost to the complainant in producing its witnesses alone for the trial of said suit at Wilmington, Delaware, would exceed $200.00 per witness and would exceed the total amount of $6,000.00; that many witnesses who would be available to the complainant under the process of the Court in Hinds County, Mis-

sissippi, would not be available for the trial of the cause in Wilmington, Delaware, for the reason that complainant could not compel their attendance as witnesses in Wilmington, Delaware, and would have to rely upon the testimony of said witnesses on depositions; that it would disrupt the operation of complainant's business to be required to transport and keep a majority of its executive officers in Wilmington, Delaware, during the time required to try said suit . . . ."

Appellee claimed, therefore, that the trial of the suit in Delaware, instead of Mississippi, would impose an unreasonable, unlawful and inequitable burden upon it; and that the purpose of appellant's filing suit in the far distant State of Delaware would be an attempt to extort a compromise settlement from appellee "because of the unreasonable and excessive expense to which complainant will be subjected upon the filing of said suit in Delaware; that the filing of said suit in Delaware by the defendants will constitute a fraud . . . upon the complainant in that said suit will not be filed in good faith but purely as a means of compelling complainant to settle with the defendants rather than submit to the exorbitant and unreasonable expense of defending said suit in Delaware; that complainant has no plain, adequate and complete remedy at law and can obtain relief only in a Court of equity and that this Court is the sole haven of refuge wherein relief may be found against wrongs of this kind and character; that complainant offers to do equity and offers to litigate the issues raised by the defendants in any Court of proper jurisdiction and venue in the State of Mississippi." Furthermore, injunction was sought on the additional ground that without injunctive relief appellee would suffer irreparable damage and injury, impending and irremediable.

The gist of the demurrers was that appellee did not come into court with clean hands; there was no equity on the face of the bill; the chancery court had no power to issue the injunction sought; and could not "properly

exercise its power to enjoin the defendants in this cause."
Upon appeal here to settle the general controlling prin-
ciples of the case, we are not confronted with the ques-
tion of libel vel non, but only with the charged errors,
that of the overruling of the demurrers, which involves
the granting of the permanent injunction, as argued.

Appellant embroiders his argument with many inci-
dental observations, not requiring discussion so as to
make sufficient the plain fabric of his position here. This,
he sets out in his own brief to be that the Chancery Court
of Hinds County "enjoined a resident citizen of Hinds
County, Mississippi (the appellant), from instituting
suit on a transitory cause of action against the nonresi-
dent corporation in the state of its incorporation and
domicile. This appeal raises the issues as to whether the
Court below had the power or equity jurisdiction to so
enjoin the appellant, and if it did, whether the Court
should have exercised that jurisdiction, under the allega-
tions and facts of this case."

The position of appellee is that: "The rule that a
citizen of one State may be enjoined from prosecuting an
action against another citizen of the same State in a
foreign jurisdiction applies equally when an injunction is
sought to restrain a citizen of one State from prosecut-
ing an action against a nonresident corporation, doing
business with lawful authority in such State."

At the outset, it must steadfastly be borne in mind
that we are confronted by a proceeding in personam.
High, in his work, Law of Injunctions, 4th Edition,
pointed out that the jurisdiction of the English Court of
Chancery to interfere with the proceedings of foreign
courts was definitely settled and clearly established.
(From that court, we derive our equity jurisprudence.)
Resuming the views of that distinguished author, he said:
"In the exercise of this jurisdiction the court does not
assume to control or interfere with the courts of the
foreign country, since any such assumed control would
be manifestly inconsistent with the plainest principles of

national sovereignty and equality. It rather proceeds upon the undoubted authority which it possesses over persons within its territorial limits and under its jurisdiction to restrain them from using the tribunals of a foreign state in such a manner as is contrary to equity and good conscience." Section 103, page 113. The author then discussed the American rule, saying: "While in this country the aid of equity is rarely if ever invoked to restrain proceedings in the courts of foreign nations, yet the same principles are held applicable to the case of enjoining citizens of one state from proceeding at law in the courts of a sister state. And while there is a lack of uniformity, amounting even to a conflict of authority, in the decided cases, the English rule seems to have the support of the clear weight of authority; and the courts of one state will, in a proper case, enjoin persons within their jurisdiction from instituting legal proceedings in other states, . . . ." Section 106, page 116.

28 Am. Jur., Injunctions, Section 204 (in a much more recent discussion), makes these observations: "A citizen of a state has an undeniable right to go into another state or country to pursue such remedies and secure such relief as may there be available. Necessarily courts are reluctant to interfere with the exercise of such right, and when called upon to do so they will carefully weigh the equities upon which the complainant's case rests. Any application for injunctive relief against a judicial proceeding in a foreign jurisdiction raises a question, not so much as to the power of the court to grant the remedy, as of the propriety of doing so in the particular case. . . . It is in fact the settled rule, *supported by all the authorities,* that a court of equity in one state may and, in a proper case, will restrain its own citizens, or other persons within the control of its process, from prosecuting actions or proceedings in other states or foreign countries." (Emphasis supplied.) This authority further lays down the general rule that "the court will consider the purpose of the parties and the object sought to

be accomplished by appealing to a court of another state, and in case it appears that the interposition of the court is necessary to prevent an inequitable thing, something contrary to good conscience, it may grant the relief asked." Section 210. As to the grounds of equitable interference, American Jurisprudence announces that "Ordinarily an action or proceeding in another state or country will be enjoined where it is properly made to appear that it is fraudulent or that it is brought for the purpose of vexing, harassing, or oppressing an opponent, or that it is in evasion of the laws of the domicil." Section 211. In Section 214 of that treatise it is further pointed out that in determining the propriety of injunctive relief against an action or proceeding in a foreign jurisdiction, courts of equity will give due consideration to the hardship and inconvenience that may arise when a party is called upon to defend at a distance.

In his brief appellant recognizes the validity of the general rule by this statement: "Although it is often said that a Court of Chancery has the power to restrain a party within its jurisdiction from bringing suit abroad that power is used only in a very strong case." By this concession, appellant very nearly "hoists himself upon his own petard."

This Court has referred to another equity inherent in such cases, and especially in the case at bar, in view of the facts with reference thereto stated in the original bill, which the demurrer admits to be true. We have said: "It is stated in the bill that all of the witnesses for the Transit Company reside in Louisiana and cannot be brought to Mississippi by compulsory process and their evidence will have to be given by depositions—an unsatisfactory manner of introducing testimony. This contention would carry much force if the facts, as stated, had been proved. But they were not proved." Tri-State Transit Co. of Louisiana v. Mondy, 194 Miss. 714, 12 So. (2d) 920, 923.

One of the cases discussed by appellant is Sharp et al. v. Learned, 195 Miss. 201, 14 So. (2d) 218, 222, holding that a court of equity has authority to restrain citizens of this State from prosecuting in another state an action against a citizen of home state of all the parties, but power will be reluctantly used. In the course of the opinion, it was said: ". . . they, as well as appellee, may proceed to a further development of the facts, if competent witnesses may be found, upon the said principal issue; and since that issue must be decided by one court, not by two, and may be done in the present case at a large saving of labor and expense, which in itself is a point worthy of some consideration, although not enough if it stood alone, we are of the opinion that the situation here is within what has been termed the very special circumstances under which the injunction prayed for and allowed may properly be sustained."

With the foregoing broad outlines of the equitable jurisprudence sought to be invoked by appellee and held to be applicable by the chancery court, we now proceed to further consideration of specific cases. The appellant cites two cases which seem to offer some support to his contention. The first is Ambursen Hydraulic Construction Co. v. Northern Contracting Co. et al., 1913, 140 Ga. 1, 78 S. E. 340, 47 L. R. A., N. S., 684, where the contracting company (a New York corporation) had sued the construction company (a New Jersey corporation) in Georgia for breach of a contract to be performed in Georgia. The construction company then filed a common law suit in a New York State Court against the contracting company for breach of contract. In reversing an order enjoining the latter suit, the Georgia court said, 140 Ga. 8, 78 S. E. 344, 47 L. R. A., N. S., 688:

"It only remains to determine whether it is unfair and against conscience for the Ambursen Company to sue the Northern Contracting Company, at the latter's home, for an alleged breach of contract, instead of submitting to the tribunal of a state selected by the other party. It is

urged as reasons for confining the litigation to the action filed in Rabun County (Georgia) that that suit was first filed; that the court in which it pends is vested with full jurisdiction over the subject-matter; that the contract was to be performed in Georgia; and that the witnesses by whom the breach of contract and other relevant issues may be established are more accessible to the Georgia court. . . . For all of which reasons it is claimed that it would be unfair and inequitable not to confine all of the litigation to the action first instituted by it. On the other hand, the Ambursen Company replies that it has the legal right to sue the plaintiff in the venue of the latter's domicile; that the matters set up by the Northern Contracting Company against prosecuting an action against it in the state where it was incorporated relate solely to its own convenience; and that equity will not take away from the Ambursen Company its plain legal rights and require it to litigate in this state for the convenience of the other party, who prefers to submit the controversy to a foreign court rather than try the issues in a court of its legal residence.''

In that case, it will be observed, both litigants were non-residents of Georgia. In the case at bar, the defendant below, appellant here, is a resident citizen of Mississippi, and the appellee here, complainant below, having qualified to do business in Mississippi, had the right to sue in this State, and was also under the duty to submit to litigation as a defendant in this State. The latter provision had one purpose, and one purpose alone, and that was to enable the citizens of this State, or other proper plaintiffs, to sue appellee here. We are not impressed by the reasoning of our confreres in Georgia.

The other case cited by appellant is Folkes v. Central of Georgia Ry. Co., 1918, 202 Ala. 376, 80 So. 458, 460. The Alabama court said:

''The question then arises, has the complainant, as a resident citizen of the state of Georgia, a standing in the courts of equity in this state to enjoin the prosecution of

a suit against it in the state of its creation and domicile? We think the correct answer is in the negative.

"It could hardly be contended that an individual resident of the state of Georgia could successfully maintain injunction proceedings against a resident of this state from prosecuting a suit against him in the state of Georgia, in an action of this character, and we have found no cases in which such an effort has been made. The complainant here, so far as the purposes of this case are concerned, is likewise considered as a resident of the state of Georgia, and we are unable to see any clear reason why the principles should be given application in favor of the corporation and denied under like circumstances to the individual. Clearly the complainant cannot be heard to complain of a suit against it in the state of its creation and domicile because the decisions or rulings of the courts of its own state may be less to its advantage in a suit of this character."

The Alabama court refused to follow us in our holding in the case of Fisher v. Pacific Mutual Life Ins. Co., 112 Miss. 30, 72 So. 846, in which case we announced that ██ ██ the rule to the effect that a citizen of one state may be enjoined from prosecuting an action against another citizen of the same state applies equally when an injunction is sought to restrain a citizen of one state from prosecuting an action against a nonresident corporation doing business with lawful authority in such state. The Alabama Court said this was merely obiter dictum. If it be so, it is sound and equitable and we here adopt it as decision.

Appellant seems to attach some importance to the claimed transitory nature of the proposed libel action against appellee. Even if it be a transitory action, we disposed of the matter in Sandford v. Dixie Construction Co., 157 Miss. 626, 128 So. 887, 889. We said, in part: ". . . we must conclude that where a foreign private corporation has duly designated a resident agent upon whom, under the new 1928 statute, process may be served

in the same way and as easily and as certainly and with as full and complete effect as upon a like agent of a domestic corporation, such a foreign private corporation, so complying with said new statute, cannot be sued in any county of the state where, in the same kind of an action under similar facts, a domestic corporation could not be sued." With further reference to the aforesaid statute, we also said in the same opinion: " . . . and the section further contains such complementary provisions as in all substantial respects place domestic and foreign corporations, which comply with the section, upon the same and an equal level as regards the manner of service of process upon them and in the matter of the conclusive force thereof." Our holdings in the case may be summarized as that, all foreign corporations doing business in Mississippi shall be subject to suit here to the same extent that corporations of the state are, whether cause of action accrued here or not, and this statute indicates a general policy of equality and similarity of treatment as between foreign and domestic corporations. See also Forman v. Mississippi Publishers Corp., 195 Miss. 90, 14 So. (2d) 344, 148 A. L. R. 469.

In an Annotation in 57 A. L. R., page 80, the following case appears: "Likewise, in Gordon v. Munn, 1910, 81 Kan. 537, 106 P. 286, 25 L. R. A., N. S., 917, in an action for partition of land in Kansas, in which a motion was filed by the plaintiff for an injunction to restrain the defendants from prosecuting in foreign jurisdictions actions to quiet title to certain real estate in such foreign jurisdictions held under the same title as the land of which partition was sought, it was held that the district court of Kansas had jurisdiction to restrain the defendants from bringing suits in the foreign jurisdictions, and that an injunction was properly allowed, where the questions at issue were the same, the greater part of the estate was in Kansas, all the parties were residents of that state, and much testimony had been taken at considerable expense, which would have to be duplicated if the same

issues were tried in the foreign jurisdictions; and such a trial or trials would involve much expense and inconvenience to all concerned.''

A citizen of a state will be restrained by its courts from instituting a suit in another state against another citizen, both parties at all times residing within the state, upon a cause of action which has been adjudicated by such courts, and arose within its jurisdiction, the necessary witnesses being all there, and the foreign suit being instituted for the *purpose of harassing and annoying the other party,* and the plaintiff being insolvent. O'Haire v. Burns, 45 Colo. 432, 101 P. 755, 25 L. R. A., N. S., 267, 132 Am. St. Rep. 191.

At page 243, 115 A. L. R., we find an interesting discussion of a case from Iowa, which we deem to be very much in point here. We quote: ''And, following the decision in Wabash R. Co. v. Peterson, 1919, 187 Iowa, 1331, 175 N. W. 523 (set out in the original annotation), the court in Bankers' Life Co. v. Loring, 1933, 217 Iowa 534, 250 N. W. 8, held that prosecution in Minnesota of a suit instituted by a resident of Iowa against another resident of Iowa, to recover the amount owing under an insurance policy issued in Iowa, would be enjoined in the latter state, on allegations that all records of the insurance company were kept at its home office in Des Moines, Iowa; that a large number of such records which were in daily use by the insurance company at its home office would have to be removed to the place of the suit in Minnesota to enable the insurer to make its defense to the action there; that all the witnesses necessary for the defense of such action resided in Iowa, and it would be necessary to transport them from various points in that state to the place of the trial in Minnesota, or to take their depositions if they refused to appear voluntarily; that the insurer would incur considerable expense in transporting such witnesses and keeping them in Minnesota during the trial; that much of such expense would be nontaxable as costs in the action; that the insurer

would incur additional expense and great inconvenience in removing the necessary records; that the action in Minnesota was instituted in bad faith for the purpose of coercing a settlement favorable to the insured, through pretended claims, by vexatious, costly, and inconvenient litigation; and that the action could be more conveniently and economically tried in Iowa. It was further held that the above conclusion would not be altered by the fact that the insurer filed an answer in the action in Minnesota. The court expressly refused to follow Illinois Life Ins. Co. v. Prentiss, 1917, 277 Ill. 383, 115 N. E. 554 (set out in the original annotation), in which a contrary conclusion was reached. In the Toring case the allegation that the action in Minnesota was brought to harass the insurer by vexatious, costly, and inconvenient litigation was supported by evidence that the counsel for the plaintiff in the Minnesota suit, an Iowa Attorney, threatened the insurer, before the institution of that action, that unless a favorable settlement was made, he would institute the action in a foreign jurisdiction and cause it all the trouble, inconvenience, and expense incident to defending a suit in such jurisdiction." To the same effect is the rule laid down in 43 C. J. S., Injunctions, Section 49, p. 499, citing cases.

In the case of Sharp v. Learned, to which some reference has already been made, supra, the question involving an injunction against a resident of Mississippi from prosecuting a certain suit in Louisiana, we said: "The comparative convenience or inconvenience of the parties as the result of granting or withholding the injunction sought should be considered . . .". Sharp et al. v. Learned 182 Miss. 333, 181 So. 142, 143, 182 So. 122.

But, the appellant argues that this inconvenience will also fall upon him. However, he is the one threatening to go into the distant state, and, from the averments in the bill of complaint, manifestly for the purpose of harassing and coercing appellee to compromise his claim against it, or to harass and vex it. If he seek to incon-

venience himself that is his business, and cannot justify infliction upon appellee of the inconvenience, expense, and vexations incident to having to litigate in Delaware an action which can be litigated in Mississippi as effectively and with entire absence of the inequitable and unfair disadvantages that would follow taking the case to far distant Delaware. Appellee, in his original bill, details the expense of one appearance at court there, as if the case would certainly be tried on a certain day set. However, let us suppose that for one reason or another, either at the instance of appellant or of appellee, the trial would have to be continued, then all of the expense, inconvenience, and vexations would have to be repeated, and this could ensue more than once. No compulsory process of the Delaware Court could produce a single witness from Mississippi, and even if it should be feasible to secure depositions of witnesses, we have branded depositions as an unsatisfactory method of producing evidence, supra. Very little of this expense, even if appellee prevail in Delaware, could be recoverable from appellant under the most favorable circumstances and the greatest portion of appellee's large expenses would be irreparably and irremediably lost to it. It could, indeed, be a costly victory. All of this unfair and inequitable result could be avoided by litigation of the issues in Mississippi, where the courts would certainly grant appellant a fair and impartial trial. (It is interesting here to recall some recent defamation cases in Mississippi—Montgomery Ward & Co. v. Skinner, 200 Miss. 44, 25 So. (2d) 572; Montgomery Ward & Co. v. Harland, 205 Miss. 380, 38 So. (2d) 771.) In this regard, see Gulf Oil Corporation v. Gilbert, 330 U. S. 501, 67 S. Ct. 839, 843, 91 L. Ed. 1055.

In the case just cited the Federal Supreme Court on this subject said:

"An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process

for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. . . .

''Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. . . .

''The plaintiff himself is not a resident of New York, nor did any event connected with the case take place there, nor does any witness with the possible exception of experts live there. . . . The only justification for trial in New York advanced here is one rejected by the district court and is set forth in the brief as follows:

'' 'This Court can readily realize that an action of this type, involving as it does a claim for damages in an amount close to $400,000, is one which may stagger the imagination of a local jury which is surely unaccustomed

to dealing with amounts of such a nature. Furthermore, removed from Lynchburg, the respondent will have an opportunity to try this case free from local influences and preconceived notions which may make it difficult to procure a jury which has no previous knowledge of any of the facts herein.'

"This unproven premise that jurors of New York live on terms of intimacy with $400,000 transactions is not an assumption we easily make. Nor can we assume that a jury from Lynchburg and vicinity would be 'staggered' by contemplating the value of a warehouse building that stood in their region, or of merchandise and fixtures such as were used there, nor are they likely to be staggered by the value of chattels which the people of that neighborhood put in storage. It is a strange argument on behalf of a Virginia plaintiff that the community which gave him patronage to make his business valuable is not capable of furnishing jurors who know the value of the goods they store, the building they are stored in, or the business their patronage creates.

". . . this trial is likely to be long and to involve calling many witnesses, and that Lynchburg, some 400 miles from New York, is the source of all proofs for either side with possible exception of experts. Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."

Our views in the case of Fisher v. Pacific Mutual Life Insurance Co., supra, have been reaffirmed in Equitable Life Assurance Society of the United States v. Gex' Estate et al., 184 Miss. 577, 186 So. 659, and in Davis et al. v. Natchez Hotel Co., 158 Miss. 43, 128 So. 871, 874.

This proposed action of libel could be brought in the Federal Court of Delaware or Mississippi, or in the state court of either state, so far as original jurisdiction is concerned, the jurisdiction of Federal and State Courts being concurrent under certain conditions. Nevertheless,

it had not been brought in either when the instant suit was filed in the Chancery Court of Hinds County. It is to be remembered that state courts cannot interfere with Federal Courts as a general rule, and the chancery court in this instance has not attempted to do so. But, appellant is a resident citizen of this State, and as such his obedience can be required of him by injunction in cases like the one before us, since it is strictly a proceeding in personam, where Congress has not fixed the venue.

To the broad general rule that state courts cannot enjoin proceedings in Federal Courts, there are limitations and exceptions which rest on the general doctrine that, as between courts of concurrent jurisdiction, that court which first obtains jurisdiction of the subject-matter and the parties retains it to the exclusion of other courts. 28 Am. Jur., Injunctions, Section 217. In the case at bar, the chancery court has in exercise of its power enjoined appellant from filing an action for libel against appellee in the State of Delaware, since manifestly from the original bill he is seeking more to bulldoze appellee into a compromise than to prosecute a good faith suit, and since such course would impose an inequitable hardship and irreparable injury upon appellee, the injunction here would be futile unless it enjoined, as it does, appellant from filing suit in Delaware, in either State or Federal Courts. As stated, the same courts in Mississippi are open to appellant. Although the chancery court in the suit before us has not acquired jurisdiction of the merits, neither have any of the other courts, and it seems to us, inasmuch as Equity grants full relief, that to protect its process here, the chancery court properly enjoined appellant as a resident citizen of this State from suing appellee in any Delaware Court, under the special circumstances involved, since there is no Federal statute prescribing venue for tort actions in libel.

In the same section of American Jurisprudence, supra, it is said: ''There is also authority to the effect that a state court, in a proper case and before an action is be-

gun in Federal Court, may prevent the commencement of such action." The whole system of equitable protection against suits threatened in another state, where plaintiff has full access to the courts of his own state, and the defendant would be sued because of a sinister purpose and where defendant would suffer irreparable injury, harassment, oppression, and vexation, would lose its entire usefulness and be perfectly futile, if in similar cases as the one at bar, a party could ignore the foreign state court but commence the same action in the Federal. Court in the distant state, because of the lack of power in a Court of Equity to grant full relief, where no statutory venue would be transgressed. Such a result seems to us to be inconsistent with common sense, and the most elemental principles of equity.

We view the whole case here, as did the Court in Vail et al. v. Knapp et al., 49 Barb. 299, where it is said: "While as a general rule, the propriety of which is apparent, the courts of this state decline to interfere by injunction, to restrain its citizens from proceeding in an action *which has been commenced* in the court of a sister state, yet there are exceptions to this rule, and when a case is presented, fairly constituting such exception, extreme delicacy should not deter the court from controlling the conduct of a party within its jurisdiction to prevent oppression or fraud. No rule of comity or policy forbids it. . . . In granting the injunction, we deal with parties residing in this state, and do not seek to interfere with or attempt to control the action of the court in Vermont, in which the action is pending. We command our own citizens, not the courts or parties residing in Vermont." (Emphasis supplied.) In the instant case, action in Delaware, however, was stopped before it started there.

The United States Supreme Court has discussed this matter. In the Fifth Decennial Digest, Vol. 24, Injunctions, 33, page 304, is the following citation which is borne out by the opinion of the Court: "A state court

may prevent a resident under its jurisdiction from doing inequity by maintaining federal court suit in a distant jurisdiction when a convenient and suitable forum is at the resident's doorstep if the matter of venue is not covered by an act of Congress.—Baltimore & O. R. Co. v. Kepner, 314 U. S. 44, 62 S. Ct. 6, 86 L. Ed. 28, 136 A. L. R. 1222, affirming 137Ohio St. 206, 28 N. E. (2d) 586, and 137 Ohio St. 409, 30 N. E. (2d) 982, certiorari granted 312 U. S. 671, 61 S. Ct. 621, 85 L. Ed. 1113, affirmed 313 U. S. 542, 61 S. Ct. 841, 85 L. Ed. 1510, vacated 313 U. S. 596, 61 S. Ct. 939, 85 L. Ed. 1550.''

Appellant says this in his brief; speaking of the courts in Delaware: ''Also, the appellee has not alleged that if said suit were filed in a state court in Delaware, that that court would not apply the Rule of *forum non conveniens* followed in some state courts and would not consider the various equities involved in arriving at a just decision as to whether it should retain jurisdiction in Delaware.'' In other words, although injunctive relief here and the doctrine named rest upon substantially the same principles, he says the chancery court should not stop proceedings before they are started, and thus prevent irreparable injury, vexation, harassment, but should permit it to be started, and let the Delaware court stop it. We do not deem further discussion of that argument necessary, except to point out that even if appellee filed such a plea there, a prudent lawyer would nevertheless be prepared to defend on the merits, in event its plea were overruled, and hence the great expense and inconvenience, vexation and harassment would nevertheless have been accomplished, and this would also be true if such plea were sustained in Delaware,—all of which injunctive relief would have certainly and surely prevented, without harm to plaintiff, to whom both State and Federal Courts are open in Mississippi.

In our opinion, the injunction was correctly granted, and the action of the chancery court is affirmed

in so doing. However, since appellant has filed an answer, and the appeal was granted solely to settle the general controlling principles, we are constrained to remand the case for trial on bill, answer and proof.

Affirmed and remanded.