of unseaworthiness or negligence." 361 U. S. 340, 80 S.Ct. 357, 358.

On the question as to whether contributory negligence is a bar to recovery under the Texas Survival Statute, Article 5525, supra, Holland argues that the Survival Statute only provides for the survival of causes of action arising under Texas State law. Holland also argues that a statute should be interpreted as of the time of its enactment, and, applying that principle, the Survival Statute does not permit the application of the comparative negligence rule of maritime law in this case. It argues that maritime law was not available to a longshoreman until 1946, when the case of Seas Shipping Co. v. Sieracki, supra, was decided. We cannot agree with this contention. The comparative negligence rule of maritime law was applied in suits by longshoremen as early as 1885. See The Max Morris, C.C., 28 F. 881, affirmed 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586. The Survival Statute was not adopted by the Texas Legislature until 1925, nevertheless, meeting the test laid down in Max Morris.

In our opinion, the doctrine of comparative negligence was available to the plaintiff here on her cause of action grounded in maritime law. We do not, however, interpret the statute to provide for the survival of only those causes of action which existed in 1925. The purpose of the statute undoubtedly is that any cause of action, whenever arising and regardless of what law it arises under, shall not be abated by death. It was never meant to freeze the statute as of 1925, thereby rendering it necessary for the legislature to constantly adopt amendments to cover new rights as they are recognized by statute or court decisions.

The judgment of the Court of Civil Appeals affirming the judgment of the trial court denying recovery under the Texas Wrongful Death Statute is reversed and the cause is remanded to the trial court with instructions to enter judgment in favor of plaintiff in accordance with this opinion.

That part of the judgment of the Court of Civil Appeals allowing recovery under the Texas Survival Statute is affirmed.

STEAKLEY, J., not sitting.

GRIFFIN, Justice.

I respectfully dissent. I would affirm the judgment of the Court of Civil Appeals as reported in 337 S.W.2d 309.

CULVER, J., joins in this dissent.

**UNIVERSITY OF TEXAS et al., Petitioners,**

v.

**Chester R. MORRIS, Respondent.**

No. A-8031.

Supreme Court of Texas.

March 8, 1961.

Rehearing Denied April 5, 1961.

Will Wilson, Atty. Gen., Lawrence Hargrove, Asst. Atty. Gen., Q. C. Taylor, Austin, for petitioners.

Chester R. Morris, pro se, for respondent.

NORVELL, Justice.

On April 20, 1960, the District Court of Travis County, Texas ordered a consolidation of three separate suits in which Chester R. Morris was plaintiff and numerous persons, including the State of Texas, The University of Texas and Dr. Anthony P. Rousos were defendants. Morris moved to stay proceedings in the consolidated cause until he could try a suit filed by him against Dr. Rousos in the United States District Court of New Mexico. Dr. Rousos countered by requesting a temporary injunction restraining Morris from proceeding with the New Mexico case until the consolidated case had been disposed of. Morris' motion was overruled and the defendants' application for temporary injunction was granted. Upon appeal from the order granting the temporary injunction, the Court of Civil Appeals reversed the order of the trial court. 337 S.W.2d 169.

The majority of the appellate court treated the matter as one of abatement. One of the justices was of the opinion that the application for the temporary injunction sought to invoke the trial court's equitable power to prevent vexatious litigation. We agree with this view. In his reply to Morris' motion to stay and in his affirmative application for temporary injunction, Dr. Rousos pleaded that the consolidated suit in the Texas court and the suit filed in the federal court in New Mexico were essentially the same and that he and the other

defendants in the consolidated cause had "been harassed through a period of years by similar suits involving similar and the same causes of action filed by the plaintiff in the County Court of Travis County, Texas, and in the 126th, 98th and 53rd District Courts of Travis County, Texas" and that "he (Morris) still persists in filing numerous other suits involving essentially the same causes of action, all of which have greatly harassed this defendant as well as all of the other defendants. * * *."

A district court having jurisdiction of the parties and the subject matter may enjoin a party from prosecuting a cause of action in another court when such relief is necessary to prevent a multiplicity of suits, avoid vexatious litigation, or prohibit the use of the judicial processes for purposes of harassment. Repka v. American National Ins. Co., 143 Tex. 542, 186 S.W. 2d 977; Baltimore & Ohio R. Co. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28; Poole v. Mississippi Publishers Corp., 208 Miss. 364, 44 So.2d 467; 21 C.J.S. Courts § 554, p. 858; 43 C.J.S. Injunctions, § 49, p. 499; 28 Am.Jur. 708, 715, 716, Injunctions, §§ 200, 209, 210; Cf. Galveston, Harrisburg & San Antonio Ry. Co. v. Dowe, 70 Tex. 5, 7 S.W. 368; Renfroe v. Johnson, 142 Tex. 251, 177 S.W.2d 600; Gulf, Colorado & Santa Fe Ry. Co. v. Pearlstone Mill & Elevator Co., Tex.Com.App., 53 S.W.2d 1001, holding approved by the Supreme Court; Commonwealth Casualty & Insurance Co. v. Morris, Tex.Civ.App., 155 S.W.2d 394, no wr. hist.

Despite Dr. Rousos' failure to enter an appearance in the Texas suit prior to the time the New Mexico suit was filed, we are of the opinion that his position is not so lacking in equity as to deny him the injunctive relief which was awarded him by the trial court. Had Morris instituted but two suits, one in Texas and a later one in New Mexico, there undoubtedly would have existed a lack of equity. But this is not the entire picture of events.

The nature of Morris' asserted cause of action is discussed in detail by the Court of Civil Appeals in Morris v. Nowotny, 323 S.W.2d 301, wr. ref. n. r. e. The principal charges made by Morris were that "he was ordered off the University campus by Deans Nowotny and Bredt; that he was arrested by University policemen upon his refusal to leave University premises; that Doctors White and Rousos testified falsely regarding his mental condition; that he had been barred readmittance to the University, and that Dean Nowotny has given out false information to his employers or prospective employers." 323 S.W.2d 311. In the particular case, the cause as against Dr. Rousos and a number of defendants was dismissed without prejudice.

In the present case when Morris' motion to stay proceedings in the Texas court and Dr. Rousos' application for temporary injunction were heard, the trial judge made extensive inquiries of Morris in regard to his institution of suits against The University of Texas and other defendants, including Dr. Rousos.

Morris testified that after the dismissal of the case considered by the Court of Civil Appeals, he secured the permission of the Legislature to sue the state and thereafter instituted numerous suits based upon the occurrences above mentioned. It appears that in addition to the case which went to the Court of Civil Appeals (337 S.W.2d 169) and the three causes which were filed in the district courts of Travis County and consolidated into one cause, Morris instituted some six or seven additional suits in the state and federal courts and attempted to institute others. In many of these, Dr. Rousos was named a party defendant and all were based upon The University of Texas incidents alluded to.

If the filing of a multiplicity of suits involving the same controversy or subject matter were not in itself sufficient ground for injunctive relief, Morris' purpose in filing repeated suits is made abundantly clear by a letter which he wrote the attor-

neys for the defendants in which, among other things, he said:

"I plan to push action against the individuals ahead of action against the state. Regardless of whether I am awarded damages, I can always sue. It will not pay the defendants to defend legal actions until death do we part. It will be cheaper for the defendants to settle out of court."

See, Renfroe v. Johnson, 142 Tex. 251, 177 S.W.2d 600.

From the evidence adduced at the hearing, the trial judge could well conclude that Morris was taking advantage of the rule which allows the prosecution of suits upon an affidavit of inability to pay costs, and instituting numerous lawsuits based upon the same transaction in the hope of securing payments of money from the defendants in order to avoid harassment.

■■ While the courts are open to all persons for the litigation of their claims and demands, the judicial processes cannot be used for purposes of mere harassment in an effort to effect settlements. While the injunction preventing the filing of suits is a device which should be employed sparingly and with care, the evidence here supports the trial judge's action. Morris has been deprived of no legal rights. He is free to litigate his claim in the pending consolidated suits in the district court of the county where the transactions upon which he bases his claim took place. But he may not be permitted to file repeated suits in various forums for harassment purposes.

One further matter may be mentioned. It is made known to us by the filing of a supplemental transcript that sometime after the decision of the Court of Civil Appeals in this case, Morris filed an amended petition in the consolidated cause out of which the disputed injunction was issued wherein he pleaded that he was no longer suing Dr. Rousos in the Texas court but instead was prosecuting a suit against Dr. Rousos in the United States District Court for the

District of New Mexico. He also filed a motion to dismiss Dr. Rousos from the Texas case without prejudice.

■■ This action does not render the temporary injunction feature of the case moot. The trial court enjoined Morris from prosecuting the New Mexico suit. The correctness of that order is the matter before us. Events taking place subsequent to the issuance of a temporary injunction may afford a basis for a modification of the order by the trial court but unless such occurrences render the cause for injunctive relief entirely moot or academic, 3 Tex. Jur.2d 313, (which is not the case here), our action must be controlled by the record made in the trial court at the time the injunction was issued.

For the reasons pointed out, the judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

STEAKLEY, J., not sitting.